**Homer Earl HILL, Plaintiff In Error,**

v.

**The STATE of Oklahoma, Defendant In Error.**

**No. A–12299.**

Criminal Court of Appeals of Oklahoma.

June 20, 1956.

toxicating liquor, allegedly while driving along certain streets in the city of Duncan. The trial was before a jury, which found the defendant guilty as charged, and assessed punishment at a fine of $150 and costs, and imprisonment in the county jail for a period of 60 days.

The Attorney General has not filed an answer brief, but a motion to dismiss on the ground that the appeal was not perfected within the time provided by law. The record with petition in error was filed in this court on December 28, 1955, which was 89 days after the date on which judgment and sentence was pronounced, barely within time, if proper extensions of time were made by the trial court. The record as filed failed to show an extension of time beyond the 60 days in which an appeal in a misdemeanor case may be perfected. But we have been furnished by the court clerk of Stephens County a certified copy of an order by the county judge of Stephens County, certified as having been made and entered on November 25, 1955, granting defendant 30 days extension of time from November 30, 1955 in which to perfect appeal. By such fact the motion to dismiss is overruled.

We might observe, however, that counsel for the majority of appellants seem to have no difficulty in obtaining the maximum time in which to perfect appeals, no matter how short the record may be, and how simple the issues presented. This of course delays the processing of the appeal, the purpose of which all too often is simply for the postponing of the day of reckoning.

The State in making out its case produced Neb Lawson, poundmaster at Duncan, who testified that on July 31, 1955 at about 5 P.M. he was in Duncan at L. D. Pryor's place on U. S. Highway 81, just across the street from a beer tavern. He heard a roaring and looked up and saw a Hudson sedan being backed "right out across the highway coming east"; that the wheels were right close to the edge of the pavement on the west side and that the car was driven south. Witness said the rear bumper of the car was broken and hanging down. About that time A. J. Alexander of the Duncan police department

A. W. Mauldin, Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Homer Earl Hill, plaintiff in error, hereinafter referred to as defendant, was charged in the county court of Stephens County with the crime of operating a motor vehicle while under the influence of in-

came by and witness advised him of the manner in which the Hudson was being driven, and asked officer Alexander if he noticed the car as it passed him down the highway.

Officer Alexander testified that as he approached the U. S. 81 Bypass on the day in question he noticed a cloud of dust and noticed a car emerge from the dust. Witness drove on and Neb Lawson described the car to him and the manner in which it was backed out over the four-lane highway, and witness decided to drive back south and further observe the car. He located the Hudson with the broken rear bumper going south on 10th Street near the Halliburton offices. Witness further testified:

"And as he went around the corner and turned back to the east he looked back at me and put his car into second and give it all it had. I pulled almost up beside him on that block, and he cut across the corner of a yard and went back south, and I pulled up to the side of him again, and he went a little over a block south or a block and a half and I got him to pull over, and got him out of the car. After I got him out of the car I asked him if he had any whiskey and he said, 'Yes, it is under the front seat'. And I went and got his whiskey out from under the front seat.

"Q. Before you searched the car he told you it was in the car? A. Yes, sir.

"Q. And after you had him out of the car and under arrest you searched the car, is that right? A. Yes, sir."

Witness further testified that it was his opinion that at the time he arrested the defendant, defendant was in a state of intoxication, and that such conclusion was based on defendant's manner of operation of the automobile and effort to get away; the way defendant looked as he drove along, and the fact that he drove his car across a lawn and was weaving across the street, and that after stopping defendant witness smelled alcohol and the defendant admitted having a bottle of whiskey in the car.

Dale Rose of the Duncan police department saw defendant at the steps of the court house in Duncan on July 31, 1955 with officer Alexander. Witness talked with defendant and swore that he had an alcoholic breath, and witness was of the opinion that defendant was under the influence of intoxicants.

Bill Grimes, highway patrolman, testified that while eating supper on the evening of July 31, 1955, he received a call to come to the court house in Duncan to make an intoximeter test. When he got to the court house steps he saw officers Alexander, Dale Rose and Watt Caruth, and the defendant. That they got in the elevator and went to the next floor to make the test on the defendant. Defendant at first agreed to take the test, but later changed his mind, so that the test was not given, but witness said that, based on his observation of the defendant, he considered him under the influence of intoxicants.

This concluded the evidence for the State.

One Dude Clark was called to testify for the defendant. He said that he drove around Duncan with the defendant the afternoon of July 31, 1955; that he and defendant were old friends and he had not seen the defendant for a long time prior to that day. He said that the defendant did not drink any whiskey while he was with him. They drove to Mildred's Drive-In on U. S. Highway 81 where beer was sold, but he said that defendant did not go in; that defendant was complaining of pain from a foot from which certain toes had recently been amputated; that defendant was taking narcotic tablets to ease the pain, and witness said that as defendant started to leave he made a suggestion to him. Said he: "Well, I had this whiskey that you have got here for evidence and I give him the whiskey and I said, 'you ought to go home and take some of that and let that foot get easy', and I let him have the whiskey and went in and got some beer." Witness said that defendant soon backed out and drove away; that he did not see him take a drink.

Dr. Dana Ryan testified that on July 2, 1955 the defendant came to him with his

left foot injured. His large toe and the one next to it had the tips severed and the physician operated on the foot, removing the left bone of the large toe, taking out two bones, and a small portion of the tip of the bone on the second toe. An infection set in and a second operation was necessary. Witness prescribed a small amount of narcotics by reason of pain. Defendant got out of the hospital on July 4, but came to the office of witness thereafter to have his foot dressed. On July 21 defendant was given a prescription for a dimeral tablet, to take one every four hours, but as often as three hours if absolutely necessary.

Witness thought that mixing intoxicating liquor with the taking of the narcotic tablets would increase the degree of intoxication. He did not think the taking by defendant of two of the tablets two hours before his arrest, and one or two more forty minutes before his arrest would appreciably affect his driving.

Mrs. Leona Bond testified to knowing the defendant and his family for a number of years, and she said that she was in Duncan, her former home town, on July 30, 1955, and that defendant drove her around looking for a house for her to rent. She said that defendant used his hand on the clutch of his car, and then used his crutch, and that he drove his car very well and she was not afraid to ride with him. She said that defendant was taking narcotics that day by reason of an operation on his foot; that it seemed to relieve his pain; she did not smell alcohol, but once he acted like he was drinking after taking some pills.

This ended defendant's evidence.

Officer Alexander in rebuttal testified to a conversation he had with the defendant following his arrest. Said he: "He said he didn't drink all that whiskey, that there was three or four other guys drunk out of the bottle with him, and he also said he had drunk two or three beers."

The defendant Hill testified in sur-rebuttal. He claimed that on the day of his arrest he was taking narcotic pills for pain in his left foot; that he was driving over town looking for a house for Mrs. Bond to rent; that he met an old friend whom he had not seen in years, Dude Clark, who rode around with him; that he took six pills; that he used his crutch to operate the clutch of his car; that he did get a numb feeling in his arms and over his body from the pills; that he decided to go home and he let Clark out of the car at Mildred's cafe; that his car had the muffler off and it would not idle and he had to race his motor to back out, and the wheels spun. He denied backing onto the shoulder of the highway. He denied driving his car across a lawn. He said that after Clark left him that before backing his car out from the cafe he took a small drink from the part of a bottle of whiskey that Clark left in the car for him to drink on account of his pain, but denied having drunk any beer or any whiskey that day other than the one drink. He said that he had never been arrested for drunkenness or any other crime other than for cashing a "hot" check which he claimed he did not know was hot, but that he was then on parole from California on a suspended sentence for pleading guilty to the charge. He said that he offered to take the intoximeter test if the officers would phone his doctor so that he could be present, but they refused to phone his doctor, so he refused to take the test; that his condition, if unusual, was by reason of the narcotic pills he had taken on account of his foot condition.

There was much other evidence not essential to recite.

█ From the recitations, it is clear that there was sufficient evidence for the submission of the question as to whether or not the defendant at the time of his arrest was operating his automobile on a public roadway or street while under the influence of intoxicating liquor. Hunt v. State, 81 Okl.Cr. 114, 161 P.2d 82; Worley v. State, 97 Okl.Cr. 271, 262 P.2d 483; Hardesty v. State, Okl.Cr., 291 P.2d 351.

In the case of Hunt v. State, supra, this court said:

"In considering the sufficiency of the evidence, the function of this court is limited to ascertaining whether there is

a basis in the evidence on which the jury could reasonably conclude that accused is guilty as charged.

"The jury is exclusive judge of the weight of the evidence and the credit to be given to the witnesses.

"Where there is competent and substantial evidence in the record from which the jury might reasonably conclude that the defendant is guilty of the crime charged, the jury's verdict will not be interfered with upon the ground that the evidence is insufficient to sustain the conviction."

There are some matters in this case, while not sufficient under the harmless error doctrine, 22 O.S.1951 § 1068, to cause a reversal, that we must notice. For example, on cross-examination the State's key witness, Alexander, who made the arrest, said: "My purpose in stopping him [the defendant] was from information that Mr. Lawson had given me that the man was drunk or something was wrong with him." And at another place he said: "I arrested him because Mr. Lawson had told me there was something wrong with the man, that I better get him off the highway or he was going to kill somebody."

■ If such alone were the true facts in the case, then the arrest would have been an illegal arrest and on proper motion it would have been necessary to suppress the evidence obtained by such illegal arrest. See Lyons v. Worley, 152 Okl. 57, 4 P.2d 3; Brinegar v. State, 97 Okl.Cr. 299, 262 P.2d 464; Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433; McCormick v. State, Okl. Cr., 277 P.2d 219; Stevens v. State, Okl. Cr., 274 P.2d 402; Shetsky v. State, Okl. Cr., 290 P.2d 149; Sanders v. State, Okl. Cr., 287 P.2d 458; Pauley v. State, Okl. Cr., 275 P.2d 331; Merwin v. State, Okl. Cr., 277 P.2d 208. In other words, in a misdemeanor case, as we have said so many times, the officer's authority to arrest is limited to a misdemeanor committed or attempted in his presence. See 22 O.S.1951 § 196, reading:

"A peace officer may, without a warrant, arrest a person:

"1. For a public offense, committed or attempted in his presence.

"2. When the person arrested has committed a felony, although not in his presence.

"3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

"4. On a charge, made upon reasonable cause, of the commission of a felony by the party arrested."

■ It is clear, then, that where a bystander would tell an officer that he had at a time past witnessed a person commit a crime that would be classed as a misdemeanor, that the officer would not be authorized by law on such information, in the absence of a warrant for arrest, to summarily seek out the accused, and without more, arrest him. But, as may be discovered from a study of the cases cited immediately above, the officer would have a right, and it would be his duty, to seek out and search for a person said to be operating a motor vehicle in a careless and reckless manner, or a surreptitious manner or even where the informant thought the operator intoxicated, but the officer would not have authority to stop and question and arrest the motorist, unless he, in observing the motorist, would observe such irregularities in the operation of the vehicle or the conduct of the operation that would, standing alone, entitle him to make an arrest for a misdemeanor committed in his presence.

In the within case on direct examination we have seen that officer Alexander testified to defendant driving his vehicle across the corner of a yard and testified to the appearance of defendant being that of a person under the influence of intoxicating liquor. He said he observed the defendant as he drove by the side of his car. Thus a question of fact was presented for the jury's determination.

The court gave an instruction that advised the jury that conviction might be had if the condition defendant was shown to be in was brought about by mixing a small quantity of whiskey with the barbiturates he had admittedly taken. Defendant contends

that the instruction as given was equivalent to instructing the jury to return a verdict of guilty against the defendant. While the instruction as given is not a model, by reason of the overwhelming evidence as to defendant's intoxication, particularly the admission of defendant that he had drunk some whiskey, the instruction at most would amount only to harmless error, and we shall not treat this matter further.

When police officer Dale Rose was testifying he was asked if he knew Homer Earl Hill, the defendant, and he said that he recognized him (when he saw him on the steps of the court house July 31, 1955) because it had not been long since he had seen him before. He said that approximately a week or two before, down at 14th and Pecan Streets, Duncan, he saw defendant. Said he: "Well, his car was in the ditch, he was very close to his sister's house and in my opinion—if you ask me I will tell you—in my opinion he was intoxicated." The court sustained an objection to this voluntary statement.

At another point the county attorney asked witness: "Have you seen him [the defendant] before when he was sober?" Witness answered, "No, sir." The court admonished the county attorney to just ask witness when and where he had seen defendant.

The defendant further complains that the trial court permitted the county attorney to go too far in questioning defendant and other witnesses concerning the proposed intoximeter test that defendant refused to take because he said the officers would not permit his physician, who had prescribed the narcotics, to be present. This argument is not without merit, but we here, too, consider the error, if any, harmless, in view of the strength of the evidence of intoxication and the admission by the defendant when testifying, that he had in addition to four barbiturate pills, had drunk some whiskey shortly prior to his arrest. There was other evidence that he had admitted drinking several bottles of beer; though on rebuttal he denied admitting this.

While we consider the evidence ample for submission of the question as to intoxication to the jury, by reason of the

errors mentioned, though considered harmless, they may have caused the jury to assess a greater punishment than otherwise, so that in the interest of fairness, and in view of the fact that this was the first time defendant had been charged with an offense involving the use of liquor, the verdict and judgment will be affirmed, but modified.

The judgment appealed from is modified from a fine of $150 and 60 days in jail, to a fine of $75 and 30 days in the county jail, and as so modified, the judgment is affirmed.

BRETT, J., concurs.