Bobby **BATTLES**, Plaintiff in Error,

v.

The **STATE** of Oklahoma, Defendant in Error.

No. A–14535.

Court of Criminal Appeals of Oklahoma.

June 18, 1969.

Rehearing Denied July 30, 1969.

Second Rehearing Denied Oct. 20, 1969.

Otto Pluess, III, Oklahoma City, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Gene Hoyt, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in error, Bobby Battles, hereinafter referred to as the defendant, was charged in the District Court of Garvin County with the crime of Grand Larceny, After Former Conviction of a Felony. He was tried by a jury, found guilty, and his punishment assessed at Ten Years in the penitentiary. From that judgment and sentence he has appealed to this Court.

From the record, the testimony presented on behalf of the State, briefly stated, is as follows: *Joe Butts* of Lintz Department Store in Pauls Valley, testified that on February 4, 1967, as he was returning from lunch at approximately 12:30, he saw the defendant, Bobby Battles, and another man leaving the store. He stated they returned in 5–10 minutes with three women. He stated that they all separated, moving all over the store. That he didn't see them take anything, but was alerted by their unusual behavior. Stated they would take an employee from the front of the store, and insist on the clerk accompanying them to look at an item at the rear of the store, which would leave the front of the store without a sales clerk. He described one of the women as very large, and wearing colored glasses. *Lewis Kehl,* manager of C. R. Anthony Store, directly across the street from Lintz', testified that he saw defendant on February 4, 1967, in his store just before noon. That three suits were taken from the store that day. That the suits were in the store that morning, were not sold, and were gone after defendant and his companions left. He further stated that defendant and four others, a total of five, (2 men and 3 women) came into the store and spread out. That defendant and the other man were right at the suits when witness went up to wait on them. That one of the ladies came up and asked him to come and wait on her for a sweatshirt, and the other two ladies came up to the suits just as he left to wait on the first lady. He further identified the suits, and after a hearing conducted out of the presence of the jury, the suits were admitted into evidence. Mr. Kehl further stated the man with defendant was approximately the same height, and a little heavier. He described the women as one very large woman with colored glasses on, and two smaller women. Several officers testified as to the arrest and finding the suits in the car, which we will cover more thoroughly later. *Marguerite Laverne McCoy,* testified that on February 4, 1967, defendant came by her home and picked her up in a white

convertible. He was accompanied by Victor Lewis. They then picked up Billie Jean Davenport and went to Pauls Valley. Another lady was riding with them by the name of Josephine Thompson. Witness stated the three women went into a dress shop, and took some things and put them in the car. Defendant Battles then told them to go into Lintz Department Store and they would have to "pull the clerks" for the purpose of taking some men's suits. That they didn't get anything in Lintz', and then proceeded to C. R. Anthony Store. She stated nothing was taken while she and defendant were in there, but that one of their group took something, she presumed were these suits. She stated that their purpose in coming to Pauls Valley was to shoplift, and that it was defendant's idea. She stated she was serving time in the penitentiary for this crime. *Billie Jean Davenport* stated defendant came by for her on February 4, 1967 in a white Pontiac convertible, and asked her if she wanted to go to "work"—meaning shoplifting. She testified substantially the same as Marguerite Laverne McCoy up to stating that she [Davenport] took a suit from Anthony's by concealing it up under her clothes. That they were all supposed to share in the profit from these suits or anything taken. That they give so much to the person who "turned" [the clerks] for you. That she was incarcerated in the penitentiary for Grand Larceny from Garfield County which had occurred on October 19, 1966. That she still had two charges pending in Garvin County. The defendant did not refute any of this testimony.

Defendant's first allegation of error is that the trial court erred in allowing three suits of clothing found in the defendant's car to be introduced at trial. The evidence relating to this was on the motion to suppress hearing held out of the presence of the jury, wherein the arresting officer, *Martin Osleger* testified that they had received a radio call stating a grand larceny had been committed, and he had reason to believe that a felony had been committed, and that the defendant and his companions

had committed it. That defendant was not in the car that the suits were found in—it was stopped about 100 feet from this car. He further stated that the call said the people that took the suits were colored, being a part of their description. *Officer Albert W. Nichols* testified they received a call that a felony had been committed and to be on the look-out for a white convertible. That they stopped the car, and the occupants were women. That he observed a grey suit in the floorboard of the car. They were all taken to police headquarters, and the car subsequently searched, and all of the suits found in the backseat on the floorboard, along with numerous personal items belonging to defendant.

While no warrants for the arrest or search of the defendant, his car, or the women had been issued at the time of the seizure, it is clear that all of the parties had been arrested, and the suits were seized incident to the arrest.

■ Prior to the arrest of the defendant and the co-defendants, the police had been informed that negro shoplifters were in Pauls Valley. This information had been dispatched to all Pauls Valley police units. There can be no question that the police officers were operating within the requirements of the statute, 22 O.S.1961, § 196, which states that: "A peace officer may, without a warrant, arrest a person * * * (2) When the person arrested has committed a felony, although not in his presence. * * * (4) On a charge, made upon reasonable cause, of the commission of a felony."

■ The arrests authorized by statute were accomplished when the women were taken into custody, and placed in the police car—and the defendant submitted to the officer's request to go to the police department. They were deprived of their freedom, and substantially "in-custody". The arrest was complete at that time, even though the police officers testified they did not *formally* place the defendant and his companions under arrest. This term is greatly mis-used by police officers, as in the instant case, but the evidence shows

their freedom of action had been restricted and that they were subject to the control of the police officers. This Court considers the arrest to have been made, and subsequently, the search—if any, was not illegal. In a case very similar to this in 1967, Russell v. State, Okl.Cr., 433 P.2d 520, this Court stated:

"The rule so aptly stated in Welch v. State, 30 Okl.Cr. 330, 236 P. 68, 70, 72, as follows, applies herein:

'If a * * * peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed, to render the arrest lawful, but if he suspects one on his own knowledge of facts; *or upon facts communicated to him by others, and thereupon he has reasonable ground to believe that the accused has been guilty of felony,* the arrest is not unlawful. * * * (emphasis ours)

'If the facts are such that a reasonably prudent man would have believed accused guilty, and would have acted upon that belief, a police officer is justified in making an arrest without warrant, although subsequent events prove that no offense had been committed.'."

See, also, Booze v. State, Okl.Cr., 390 P.2d 261, 262, wherein this Court stated:

"If a peace officer arrest a person without a warrant, he is not bound to show in his justification a felony actually committed to render the arrest lawful, but if he suspects one on his own knowledge of facts, or upon facts communicated to him by others, and thereupon has reasonable ground to believe that the accused has been guilty of a felony, the arrest is not unlawful."

■ It is well-established law, and we will not again list the numerous cases so holding, that the constitutional guaranty against unlawful search and seizure does not prevent seizure incident to a lawful arrest where the evidence is not concealed but in open view, and where it would logically tend to prove elements of the offense charged.

■ Therefore, it is our conclusion that the trial judge did not err in admitting the suits into evidence.

■ Defendant's second proposition is that the verdict was not sustained by sufficient evidence. He urges that the testimony of the accomplices, unsupported, is not sufficient to sustain the verdict, which is in violation of Title 22, O.S.1961, § 742, which provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."

This Court is of the opinion that the evidence in this case was overwhelming of the guilt and participation of the defendant in the crime committed. The State's case covered every detail, up to the testimony of the accomplices, which simply added weight to the fact that they had all come to Pauls Valley together to shoplift. That the evidence proves, beyond any doubt, that they were all acting conjointly in the commission of a felony, and since defendant aided and abetted, and apparently instigated the whole plan, he can be prosecuted and punished as a principal. In a case very similar to this, Austin v. State, Okl. Cr., 418 P.2d 103 (1966), this Court stated:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof. Title 21, O.S.A., § 1701."

"All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, are principals. Title 21, O.S.A., § 172."

"The distinction between an accessory before the fact and a principal, and a prin-

cipal, and between principals in the first and second degree; in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried, and punished as principals and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

"Proof that defendant aided and abetted the principals in the commission of the crime can be proven by circumstantial evidence, and if sufficient, as in the instant cause, will support the verdict."

Since we have previously stated that the evidence of the State was more than sufficient to sustain the verdict, we find, under the law, the proposition of error to be without merit. Defendant's third proposition of error is also without merit.

It is the opinion of this Court, that the defendant had a fair and impartial trial, and that the verdict of the jury is amply sustained by the evidence. Therefore, the judgment and sentence of the District Court of Garvin County is

Affirmed.

BRETT, P. J., and BUSSEY, J., concur.