Ben LLOYD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17586.

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1973.

James H. Ivy, Waurika, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Daniel J. Gamino, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Ben Lloyd, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Jefferson County for the offense of Stealing Copper Wire, After Former Conviction of a Felony. His punishment was fixed at two (2) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, W. A. McKay testified that he was employed as a communications su-

pervisor for Mobil Oil Company for the southern half of Oklahoma. At approximately 5:30 p. m. on November 7, 1971, he received a call from the dispatcher and proceeded to the scene located approximately 12 miles east of Addington. He found that two wires of the company telephone line had been cut down. He identified two samples of wire which he removed from the areas where the wire had been cut.

Deputy Allen testified that on the evening in question he investigated the scene of the wire cutting. He then proceeded east to check a fence and gate. After he had driven approximately one-half mile, he observed a vehicle coming toward him. He turned on his red light and stopped the vehicle. As he approached the vehicle, he immediately saw a pair of seven-foot tree trimmers in the car. The defendant was riding in the car as a passenger. He asked the driver, Jerry Parris, and the defendant to get out of the car and he "patted them down." They were advised they were under arrest and another officer that had arrived advised them of their "rights."

On cross-examination, Allen testified that he stopped four other cars in the area prior to stopping the defendant's car. He testified that he stopped them "to establish who they were and what reason they had, you know." (Tr. 30)

Ronnie Harbour testified that he was riding with Deputy Allen on the evening in question. He drove Jerry Parris' car back to the courthouse after he and the defendant had been arrested.

James Harris testified that in November of 1971 he was in charge of a tree trimming crew in Ardmore. On the 7th day of November, the defendant came to his house and wanted to borrow some cutters. He identified State's Exhibit 1 as the cutters that he loaned the defendant.

James Turner testified that he was employed as an investigator for the District Attorney's office. He transported the wire samples and wire cutters to the Oklahoma State Bureau of Investigation.

The defendant stipulated that the testimony of William Caveny taken at the preliminary hearing could be read to the jury. Caveny testified that he was employed as a chemist for the Oklahoma State Bureau of Investigation. He examined the wire cutters microscopically and found traces of freshly cut copper on the cutting edge.

Jerry Lee Parris testified that on the afternoon in question he went with the defendant when the defendant borrowed a pair of tree trimmers from James Harris in Ardmore. They drove to a location on Addington Road and he used the trimmers and cut two telephone lines. They left the location to see if anyone was going to come out and check on the wires. They returned to Ardmore and as they were going back to the scene, were stopped by the Deputy Sheriff.

The defendant did not testify nor was any evidence offered in his behalf.

The sole proposition asserts that the court erred in refusing to sustain defendant's motion to suppress the evidence of the tree trimmers "obtained after an unlawful detention of an automobile in which defendant was a passenger." We are of the opinion that the trial court properly overruled defendant's motion to suppress. After ascertaining that a crime had been committed, Deputy Allen proceeded to stop several vehicles in the close proximity of the scene of the offense. In Hargus v. State, 58 Okl.Cr. 301, 54 P.2d 211 (1935), the Court stated in the third paragraph of the Syllabus:

> "For the purpose of preserving the peace and to prevent crime, a peace officer or private citizen may make reasonable inquiry of persons coming under his observation or brought to his knowledge under circumstances which reasonably suggest that a crime has been or is about to be committed."

After stopping the vehicle to make inquiry, Deputy Allen observed the tree trimmers in plain sight in the back seat. In Turci v. State, Okl.Cr., 482 P.2d 611 (1971), we stated:

"The stopping of the vehicle for a defective tag light was proper as an offense in the presence of the officers. There is nothing in the record to indicate that this was a sham arrest. While defendant was still in the vehicle, the officer inquired and learned his name and that he was a felon. The officer then saw the guns in open view without making any search. Evidence discovered in open view when the officer has a legal right to be there is admissible. Battles v. State, Okl. Cr., 459 P.2d 623 (1969). Stone v. State, Okl.Cr., 442 P.2d 519 (1968). Accordingly we find defendant's contention to be without merit."

In conclusion, we observe that the record is free of any error which would justify modification or require reversal. The judgment and sentence is, accordingly, affirmed.

BLISS, P. J., and BRETT, J., concur.