**William HALE, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. A–16632.**

Court of Criminal Appeals of Oklahoma.

Feb. 16, 1973.

Arnold Britton and Carroll Womack, Asst. Public Defenders, Oklahoma County, for appellant.

James McKinney, Asst. Dist. Atty., Oklahoma County, for appellee.

## OPINION

BLISS, Presiding Judge:

William Hale, a/k/a Will Hale, appellant, hereinafter referred to as defendant, was charged with the crime of Murder. The defendant was tried before a jury in the District Court of Oklahoma County, Case No. CRF–70–855, and was convicted on the lesser offense of Manslaughter in the First Degree. His punishment was fixed at a term of forty (40) years in the state penitentiary at McAlester. From said judgment and sentence, a timely appeal has been perfected to this Court.

The facts of the case from the testimony were substantially as follows.

Dr. Harry T. Cooper, osteopath, was summoned to 304½ N.E. 12th Street to ex-

amine an apparent homicide and he saw the body of Rosalee Hale, dead from an apparent shotgun blast in the area of the bridge of the nose.

Dr. James T. Luke, State Medical Examiner, performed an autopsy on the body and determined death was a near contact wound in the central part of the head. Further, he found powder burns in the immediate area of the wound and also determined that the deceased was intoxicated at the time of death but not to the point of immobility or unconsciousness.

Calvin Reed who lives at 304 N.E. 12th and who was a neighbor of William Hale arrived home the evening of April 4, 1970, at approximately 7:30 p. m. At 9:00 p. m. he requested Mr. Hale, the defendant, to remove his automobile from the driveway so that Mr. Reed could get his car out onto the street. At this time Mr. Reed saw both the defendant and the deceased. Mr. Hale removed his car and let Mr. Reed out of the driveway. On his return Mr. Reed parked his car behind Mr. Hale's and at 1:00 a. m. the next morning Mr. Hale requested Mr. Reed to move his car so that Mr. Hale could go to the Veterans Hospital. Mr. Hale stated he was having chest pains and thought he might be having a heart attack. At 4:00 a. m. the morning of April 5, 1970, William Hale came to the residence of Mr. Reed and was beating on his window and awoke Mr. Reed and asked him if he had heard any noise because his front door was wide open and would Mr. Reed come upstairs with him. Mr. Reed proceeded upstairs with Mr. Hale. Upon arriving at the landing at the top of the stairs, Mr. Hale ran into the apartment and began yelling and hollering, calling a name Mr. Reed could not understand. Mr. Hale said something about calling his mother-in-law. Mr. Reed did not comprehend why Mr. Hale was yelling and went down to his apartment and summoned police.

Officer Wreath, of the Oklahoma City Police Department, arrived at the scene of the homicide the morning of April 5, 1970.

Upon arriving at the apartment, the officer was told by Mr. Hale to come and look what someone had done to his wife. Mr. Hale stated someone had raped and killed his wife. Officer Wreath found the body of Rosalee Hale in the northwest bedroom of the apartment and in the position as it appeared in State's Exhibit No. 3. At this time Mr. Hale complained of chest pains and was taken by officers to the Veterans Hospital.

Officer Burke, of the Oklahoma City Police Department, arrived on the scene the morning of April 5, 1970, and took photographs that he later identified at trial as accurate representations of the scene on his arrival. Also, Officer Burke later that day found a shotgun in a vacant lot near the scene of the homicide although no cartridges were found in the gun.

Officer Yandell, of the Oklahoma City Police Department, went to Veterans Hospital and questioned the defendant and in his testimony stated the following:

"Yes, sir. He advised me that they had been over to her mother's house and had gotten back home I think around 10:30 p. m.; at which time, out in front of the house, he observed some friends of his from Texas. Now the names he didn't recall. However, I think he said one of them's name was Junior.

"He stated he started visiting with these men, two of them, at which time his wife went upstairs and he left with these men. He said they went somewhere on 23rd Street and had a beer, at which time he started having chest pains, thought he was having a heart attack.

"They took him back to his residence. He went upstairs, told his wife about the chest pains. He said she then advised him he ought to go to the hospital. Stated he then left and she stayed there, where he went to the V. A. Hospital and was examined.

"After the examination, he said around, I think 12:30 or 1:00 o'clock, that he returned to his residence and noticed the

door was open upstairs. He said it wasn't the policy that his door would be open. He then ran downstairs to the neighbor down there and woke him up because he felt something had happened.

"At this time he advised that the neighbor accompanied him upstairs and they found his wife in the condition that she was in.

    \*     \*     \*     \*     \*     \*

"Yes, I read him his constitutional rights.

    \*     \*     \*     \*     \*     \*

"He advised that they had been over to his mother-in-law's house that he had told us and he stated that they had arrived home approximately the same time that he had told and that he did see some friends in the front yard.

"He stated, however, he did not leave with his friends but he started talking to them and his wife went upstairs. He said while he was standing in the front yard that he heard his wife call for him and upon him going to the door and starting up the stairs, observed her to have the shotgun, aiming it at him.

"He stated she said, I have done this before and didn't shoot, but I will this time. He advised he then went up the stairs with her still pointing the gun at him and started into the bedroom, at which time he asked her to let him use the restroom. He stated at this point he grabbed the gun and they began struggling over it, at which time it discharged, striking her.

"He advised after he observed that she was dead, or possibly dead, that he left the scene and threw the shotgun in a vacant lot at 12th and North Lincoln for fear that people would think that he had murdered her. He then went to Veteran's Hospital where he was checked up.

"He stated he then returned back home at a later time and got the neighbor up to accompany him upstairs." (Tr. 63–66)

Officer Christian, of the Oklahoma City Police Department, was present when Officer Yandell read Mr. Hale his constitutional rights and was also present when the defendant made his confession to Officer Yandell.

The defendant offered no evidence at trial.

■ Defendant's first proposition of error asserts that certain witnesses testified as to their opinions of the position of the deceased at the time she was shot. Defendant does not cite authority on which this proposition is raised and fails to show that he was prejudiced by the admission of such testimony. The policy of this Court regarding general allegations of error without citation of authority is clear. This Court has repeatedly held as in Sandefur v. State, Okl.Cr., 461 P.2d 954 (1969), that:

> " 'It is necessary for counsel for plaintiff in error not only to assert error, but to support his contentions by both argument and the citations of authorities. Where this is not done, and it is apparent that the defendant has been deprived of no fundamental rights, this court will not search the books for authorities to support the mere assertion that the trial court has erred.' See: Collins v. State, Okl.Cr., 407 P.2d 609."

Without a showing of prejudice to the defendant or breach of the defendant's fundamental rights, this Court finds defendant's first proposition to be without merit.

Defendant's second proposition asserts error in that State's Exhibit No. 3, a photograph of deceased at the scene, had no value other than to prejudice the defendant and inflame the jury. This Court cannot agree with defendant's contention.

As suggested in the brief of the State of Oklahoma, the defendant was charged with the crime of Murder and convicted of First Degree Manslaughter. If the jury was so allegedly inflamed and the defendant so prejudiced, it would appear that the jury would not have returned a verdict on a lesser included offense.

■ Defendant cites Glenn v. State, Okl.Cr., 333 P.2d 597 (1958), which states the test necessary for the admission of gruesome or otherwise inflammatory photographs. The test for the admission of such evidence is that the photographs must be relevant to some issue in the case; and, if they are gruesome or otherwise inflammatory, the court will weigh the probative value of the evidence against its prejudicial effect and determine its admissibility accordingly. The photographs in *Glenn, supra,* were admitted.

■ In the present case the photograph of the deceased, although gruesome, did have probative value material to this case. Its introduction was necessary to show that the deceased was Rosalee Hale and the photograph was so identified at trial. It further showed the entry of the near contact shotgun blast in the face of the deceased, allowing the jury to decide its probable trajectory, an issue at trial which received varying descriptions. Lastly, the picture indicated the relative position of the victim to the furniture in the room. This, accompanied with the picture of the wound, allowed the jury to decide whether the deceased could have been shot while struggling with the defendant, which apparently the jury did.

Since the photograph was probative to a material point at trial, it was within the trial court's discretion to admit its introduction into evidence. See Born v. State, Okl.Cr., 397 P.2d 924 (1964).

■ Defendant's last proposition asserts error in the trial court's failure to instruct the jury on circumstantial evidence, even though such instruction was not requested. In Woods v. State, Okl.Cr., 485 P.2d 486 (1971), a case like the present one, involving both circumstantial and direct evidence citing Watkins v. State, Okl.Cr., 351 P.2d 317 (1960), we stated:

"The defendants finally contend that the trial court erred in not giving an instruction on circumstantial evidence. The evidence herein was both direct and circumstantial. It has been repeatedly held that where the state's evidence is not entirely circumstantial, it is not necessary to give an instruction on circumstantial evidence."

This Court has surveyed the entire record in this case from beginning to end and we find the defendant had a fair and impartial trial, free from prejudicial error. Therefore, it is the decision of this Court that the judgment and sentence be affirmed.