Billy Joe DAVIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–18140.

Court of Criminal Appeals of Oklahoma.

Oct. 3, 1973.

Rehearing Denied Oct. 22, 1973.

**1196**

Mac Oyler, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Fred H. Anderson, Asst. Atty. Gen., Robert Dennis, Legal Intern, for appellee.

## OPINION

BLISS, Presiding Judge:

Appellant, Billy Joe Davis, hereinafter referred to as defendant, was charged, tried and convicted in the District Court of Oklahoma County, Oklahoma, case number CRF–72–1750, for the offense of Unlawful Possession of a Controlled Dangerous Drug With Intent to Distribute. His punishment was fixed at ten (10) years in the State Penitentiary and a fine of Five Thousand Dollars ($5,000.00). From said judgment and sentence, a timely appeal has been perfected to this Court.

Danny Allen O'Dell testified he was employed as a police officer for Bethany, Oklahoma. On July 24, 1972, at approximately 4:00 a. m. he observed a 1963 Ford weave from the middle lane of traffic to the right lane and then back to the middle lane four times. Officer O'Dell signaled the vehicle to pull over whereupon the vehicle crossed the three lanes of traffic to the right and stopped after bouncing off the curb. Officer O'Dell approached the vehicle and asked for a driver's license, at which time the defendant stepped from the vehicle and produced a license. The defendant had the appearance of being intoxicated; however, there was no smell of alcoholic beverage. As the defendant stepped from the vehicle, his dome lights came on and the officer saw five pills laying on the driver's side seat, which he identified from previous training as amphetamines. After defendant exited the vehicle, O'Dell noticed a blue bank bag lying on the front seat with the zipper open and a white powdery substance around the lip of the bag. Officer O'Dell seized the bag and upon examination found it contained two red bags and one brown bag. These bags contained several packets of amphetamines. Officer Barnes arrived as backup and after being advised of the situation he opened the passenger door and then the glove box where he removed a fountain pen. This pen was disassembled and they found several more pills of the same type inside.

Officer O'Dell then testified that they found approximately ten pills identified as amphetamines in the fountain pen that came from the glove compartment. He advised that defendant was under arrest for

improper lane usage and after observing the pills, put him under arrest for possession of amphetamines. The evidence was turned over to the captain of detectives at the Bethany Police Department, after being tagged and identified by Officers Barnes and O'Dell. There was an approximate total of 1,760 pills.

George Henry Barnes testified he was employed as a Bethany police officer on July 24, 1972, when at approximately 4:00 a. m. he was assigned to back up Officer O'Dell concerning a vehicle stopped for a traffic violation. Upon arrival he observed Officer O'Dell standing at the driver's door of defendant's vehicle and the defendant standing to the left rear quarter panel of the same car He approached the vehicle where he observed the defendant to have the symptoms of being highly intoxicated, except there was no alcoholic odor. Officer O'Dell showed him four or five tablets he had recovered from the front seat and a bank bag which he had removed from the vehicle. Barnes then went to the passenger side of the car and opened the glove compartment. He found a glass jar containing a fountain pen, and after removing the cap from the fountain pen, found it to contain tablets thought to be amphetamines. Upon returning to the station, they inventoried the pills which totaled approximately 1,760.

Officer O'Dell was then recalled wherein he testified numerous keys were found in a brown bag which was contained inside the blue bank bag.

B. J. Schmidt then testified he was employed as captain in charge of the detective division at the Bethany Police Department. On July 24, 1972, at approximately 4:30 a. m. he received a call from Officer O'Dell requesting he come to headquarters. Upon arrival he inventoried the contents of a large blue zipper bank bag, finding three smaller zipper type bags. One the smaller bags contained six individual packages of small tablets. The packages totaled approximately 1,700 tablets ranging from slightly over fifty to approximately five hundred per package. The second red bag contained eight other packages of a white powdery substance. The third package contained a quantity of keys. Captain Schmidt testified he had training with recognition of drugs but was unable to identify the drugs until after having submitted them to the laboratory where they were identified. Captain Schmidt then testified concerning the location of Bethany Nazarene College, boys' dormitories, downtown section, grade school, junior high and high schools in the immediate vicinity of defendant's arrest. Defendant was transported to the Oklahoma County Jail that morning. Defendant subsequently returned to the Bethany Police Station inquiring about getting his keys back that had been seized at the time of the arrest and which were in one of the bags.

On cross-examination Captain Schmidt testified there was no proof concerning the defendant having sold anything in the City of Bethany and that there was no proof defendant had come from any educational institution prior to the arrest.

Ronald Wayne Confelter then testified he was employed by the Oklahoma State Bureau of Investigation as a forensic chemist. On July 24, 1972, he received items of evidence from the Bethany Police Department. State's Exhibit No. 7 was identified as the evidence envelope containing several baggies of white double scored tablets. It contained individually packaged pills in units of 5, 67, 100, 500, 500, 500 and 100 respectively. The pills were analyzed and identified as containing amphetamines. The pills from the pen were also so identified.

The State then rested and defendant's motion to suppress, motion for mistrial, demurrer and motion for directed verdict for acquittal were overruled with exceptions.

The defendant then testified that on July 23, 1972, around 6:00 p. m. he drove over to pick up Donny Lee Sanders and some other boys to look at a car and purchase a tire. He subsequently let the boys out since he was to meet his girlfriend at the

Squirrel Cage Club at 8:00 p. m. They met at the club and later left and they went to her home in Yukon, Oklahoma, where he stayed until 3:30 or 4:00 a. m. He testified he did not notice a blue bag or pills in his car during this period of time, and to his knowledge had never seen the bag before. He was returning home from Yukon when the Bethany Police stopped him by using a red light. He signaled and pulled over to the curb where he stopped. Mr. Davis admitted to crossing the lane line and weaving slightly. He got out of his car and met Officer O'Dell at the rear of the automobile where he tendered his driver's license. Another police officer arrived and he saw this officer enter the passenger side of his vehicle prior to hollering something about "white crosses." He was subsequently taken to the police station where he agreed to sign a search waiver for the trunk of the automobile. He did not know the bag with the pills or the bottle with the fountain pen were in his car. After he got out of jail he went to the Bethany Police Department and talked to Captain Schmidt concerning releasing some keys which were inside a brief case in the back seat. He identified the keys in evidence as those that had been in his brief case.

On cross-examination Mr. Davis stated that he was a plumber by trade and operated a booking agency where he booked bands and go-go dancers for clubs. Defendant admitted to making speeches around town against drugs and to being a former drug addict.

Donny Lee Sanders testified he was nineteen years of age and had known the defendant for approximately one year. On July 24, 1972, defendant gave him a ride to a friend's house, where he was to pick up a car which he was unable to get. Three friends accompanied him and they sat in the back seat while he rode in the front with the defendant. One boy had a blue bank sack which contained mini bennies. This boy had brought the stuff to his apartment earlier. This boy had the bag when he got in the car with the defendant. He identi-

fied the bank sack in evidence as just like the sack which the boy had.

██ The defendant's first proposition in error contends that the trial court erred in overruling the defendant's motion to suppress since the pills were the fruits of an illegal search. With this contention we do not agree.

There is no question that the defendant was legally stopped and arrested for a traffic violation and that the five amphetamine pills were in the plain view of the arresting officers. This Court has consistently held under the "plain view" doctrine that the act of a peace officer's seeing such items did not constitute a search when the officer had the right to be in a position to see same. Reynolds v. State, Okl.Cr., 511 P.2d 1145 (1973); Lloyd v. State, Okl.Cr., 505 P.2d 1364; and Battles v. State, Okl.Cr., 459 P.2d 623.

Concerning the bank bag full of individual packets and the pen found in the glove box, the officers had probable cause to arrest the defendant for the commission of a felony when they observed the five amphetamine pills in plain view on the defendant's front seat. In Gaston v. State, Okl.Cr., 457 P.2d 807, this Court approved the search of an automobile without a warrant some one and one-half hours after a felony arrest as being proper search incidental to an arrest. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, cited with favor in the Gaston, supra, case the United States Supreme Court held that a lawful search of an automobile may be made without a warrant where there is probable cause to believe that it contains that which by law is subject to seizure.

In the instant case, the arresting officers had reason to believe that a felony had been committed and probable cause to believe that said vehicle contained contraband dangerous drugs. Therefore, this search contemporaneous with said lawful arrest was reasonable and the defendant's first proposition is without merit.

██ The defendant next urges that the evidence is insufficient to prove the specif-

ic "intent to distribute." This Court in the recent *Reynolds, supra,* case held that the element of specific intent is a question of fact to be determined by the jury based on all the facts and circumstances properly presented.

In the instant case there was sufficient circumstantial evidence of specific intent, i. e. the amount and the individually packaged units, properly to present the case to the jury. Therefore, the trial court did not err and the defendant's second proposition is without merit.

The defendant's last proposition in error urges that the penalty fixed by the jury was the result of bias and prejudice engendered by improper conduct of the prosecution during trial. The defendant cites three separate incidents to illustrate his argument.

■ During the direct examination of Captain Schmidt the prosecutor inquired as to the street value of the seized drugs. Defense counsel objected upon the grounds that there was no evidence before the court that any drugs had been sold and the objection was sustained. Thereafter, the prosecutor asked the same similar questions causing the same ruling by the court. This Court agrees that the action of the prosecutor in disregarding the trial court's ruling was highly improper. However, it is the opinion of this Court that the total value of the drugs was relevant to the proof of intent to distribute and, therefore, properly admissible. Since the value was admissible there was no prejudice and the improper conduct constitutes harmless error.

■ During trial one of the officers found it necessary to refresh his memory by referring to a police report. On cross-examination defense counsel was given permission by the trial court to inspect the report for purposes of cross-examination. The prosecutor objected, arguing before the jury that the State had no objection to the jury seeing the report, but that it was improper to allow defense counsel to inspect same without introducing it into evidence. Defendant urges that this argument before the jury was improper since the prosecutor knew full well that the report was not admissible. Again we find the conduct of the prosecutor to be improper since it might tend to leave an unsupportable impression on the jury. However, in the instant case, it is our opinion that the conduct does not require reversal or modification since there is no showing of prejudice nor did defense counsel move for a mistrial or raise the issue until appeal.

■ Defendant next urges that the prosecutor's cross-examination of the defendant and his witness tended to place the defendant's character at issue and subtly insinuate that the defendant had been guilty of other crimes. However, the record fails to reflect that defense counsel made any objection to same.

In Love v. State, Okl.Cr., 360 P.2d 954, this Court recognized the general rule that objections must be made in order to preserve the error for appeal. See also Byrum v. State, 54 Okl.Cr. 173, 15 P.2d 1096. In the instant case the prosecutor's questions on cross-examination were improper. However, all were answered negatively and without objection. Therefore, for the reasons set out above, defendant's last contention is without merit.

For the reasons heretofore stated, the judgment and sentence of the trial court is hereby affirmed.

BUSSEY, J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge (concurring in part and dissenting in part):

I agree that the initial arrest was legal; that the intoxicated condition of defendant, without the odor of alcohol, coupled with the presence of the pills, in plain view on the automobile seat, gave sufficient probable cause to arrest defendant for intoxication and possession of contraband; and

that the subsequent search of the vehicle was incident to the arrest. I also agree that the circumstantial evidence was sufficient to show intent to distribute; but I disagree with this Court's harmless error treatment of the prosecutor's improper trial conduct. If the prosecutor's conduct was "highly improper," and if his improper conduct "might tend to leave an unsupportable impression on the jury," and if his conduct might have placed defendant's character at issue because of insinuations that defendant might have been guilty of other crimes, I believe the cumulative effect of such conduct must have caused some prejudice. Because of continuous improper conduct, prejudice can creep into the trial much the same as the sea erodes the shore; and it should not be permitted to occur. To the defense counsel, the harmless error concept soon becomes like a bingo game. How many harmless errors can the prosecution commit, before it becomes recognizable error? Consequently, I would modify the sentence imposed; otherwise, I concur in this decision.