**Dow Leroy SEHER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–195.**

Court of Criminal Appeals of Oklahoma.

Aug. 20, 1976.

John Clifton, Shawnee, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Annis Kernan, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Dow Leroy Seher, hereinafter referred to as defendant, was charged, tried and convicted for the offense of Unlawful Possession of Marijuana with Intent to Distribute, in the District Court of Pottawatomie County, Case No. CRF–74–372. After both parties waived their right to trial by jury, the defendant was tried by the Court on the 2nd day of April 1975. Subsequently, on the 19th day of September 1975, a verdict of guilty was returned by the Court and the defendant was sentenced to serve a term of two (2) years in the State Penitentiary and to pay a fine of Five Hundred Dollars ($500.00) and cost of the prosecution, one of the years of the sentence was suspended. From said judgment and sentence, the defendant has filed this timely appeal.

The trial of this matter consisted of stipulations and agreements between the State and defendant, no witnesses were called as such, however, both parties agreed that should witnesses be called, their testimony would be the same as that transcribed at a motion to suppress hearing, a hearing concerning the confiscation of defendant's motor vehicle (Case No. C–74–465), and the preliminary hearing held on November 12, 1974. Counsel for defendant submits as his records in this case the transcripts of the above proceedings as there was no actual hearing on the merits of this case but rather a finding by the Court based on the stipulation and agreements set forth in the incorporation of the recorded transcripts heretofore mentioned.

The arresting officer in this case was Trooper Green who testified that on the 17th day of August 1974, he was a trooper with the Oklahoma Highway Patrol and in performance of his duties on U.S. Highway 177 in Pottawatomie County, Oklahoma, when he noticed a northbound Karman Ghia sports car, traveling at a rate of 89 miles per hour, according to his radar. Trooper Green then pursued and stopped the vehicle, at which time the defendant emerged from the vehicle and met Trooper Green between the patrol car and the defendant's car. At that time Trooper Green observed various symptoms and signs about the defendant which he associated with the consumption of alcoholic beverages and/or narcotics. While Trooper Green was discussing the situation with the defendant, Chief Lloyd Rogers of the Tecumseh Police Department came along in his private vehicle and parked in front of the defendant's car. According to Chief Rogers, this meeting was quite coincidental as he was on his way to work in Tecumseh and saw Trooper Green attempting to arrest two individuals alone and decided he would assist Green at that time. After placing the defendant in the patrol unit, the two officers then approached the passenger, an individual by the name of Yarsa, and upon having the passenger roll down the window both became convinced the passenger was intoxicated. At this time Trooper Green testified that he observed an open shoe box behind the passenger seat in plain view. Further, that the shoe box contained plastic baggies with a green leafy substance, some pills and "other paraphernalia." By this time another highway patrolman, Trooper Floyd had arrived on the scene along with another Tecumseh police officer. The defendant and his companion were then handcuffed and placed in the patrol unit in custody of Trooper Green. Trooper Green then informed Trooper Floyd and Chief Rogers that he had observed contraband narcotics in plain view in the back of the passenger seat of the car in which the defendant and his companion were riding. At this time Trooper Floyd and Chief Rogers proceeded back to the automobile, seized the shoe box examined the same, finding the plastic baggies, the green leafy substance, pills, and other paraphernalia. After examining the shoe box Trooper Floyd, then commenced a search of the defendant's automobile. Finding first, some cash totaling approximately One Hundred Fifty Dollars ($150.00) or Two Hundred Dollars ($200.00) wrapped in tinfoil in the glove compart-

ment and then with the assistance of Officer John Bell, they folded down the back to the rear seat which serves as an entrance to the rear compartment of the automobile and there discovered what was later identified as five pounds of marijuana. On further questioning Trooper Green testified that he saw the shoe box containing the two bags of marijuana in plain view when he went to the passenger's side of the vehicle to remove the passenger. This was while the door was open and the dome light was on in the sports car. Further the other three officers each testified that they had seen the shoe box in plain view prior to commencing their search and seizure. Furthermore, each officer testified that he was informed by the arresting officer, i. e., Green, that there was contraband in defendant's automobile.

Cross-examination consisted primarily of details of each step taken by each officer at the scene. Questions also concerned the officers' ability to see the shoe box inside the car without the use of flashlights or "breaking the close" of the automobile.

The chemical report of Dennis L. Kirkpasture was stipulated to and taken by the parties and entered into evidence without objections. Essentially the chemical report relates that the green leafy substance and brown substance was marijuana and that pills contained a barbiturate acid derivative. At this time the State rested. Upon close of the State's case, the defendant demurred and reurged his motion to suppress, both of which were overruled by the trial court.

The defense attorney then for his case in chief, incorporates the testimony of Paul Yarsa, the passenger in defendant's automobile, and the testimony of the defendant which were given at a hearing on a motion to suppress. Mr. Yarsa testified that he had been given a ride by defendant from Hugo, Oklahoma to Oklahoma City. That the passenger had driven part of the way but in Ada, Oklahoma, the defendant had commenced to drive his own car. Mr. Yarsa had been asleep and was awakened when the highway patrol trooper stopped

the defendant's vehicle. Mr. Yarsa testified that he had with him some clothes and two six-packs of beer minus one can which he had previously consumed. He then testified that soon after the defendant's vehicle was stopped he was told to get out of the car and one of the officers "then got into the back seat and rustled around for some fifteen to thirty seconds and came out holding a baggie and saying something about hashish." Mr. Yarsa denied any knowledge of the contents of the shoe box and that his unusual actions were caused by his sleepiness. Mr. Yarsa denied that either he or defendant Seher had consumed any alcohol or narcotics that day with the exception of one beer.

It was at this time stipulated between the State and the defendant that no one knew the whereabouts of the shoe box at the time of trial. It had disappeared.

Finally, the defense incorporates the testimony of defendant Seher which was previously given at the hearing on motion to suppress. Essentially the defendant testified that he was a resident of Oklahoma City and had gone to the area of Hugo to give his friend a ride back home. He testified that he was travelling approximately eighty miles per hour when he met or passed Trooper Green. The defendant denied that he had consumed any alcohol or narcotics that day. The defendant testified that he was aware of a shoe box in the automobile but that to his knowledge the lid was on the shoe box and it was tightly closed.

For his first and only major assignment of error, the defendant urges that the trial court erred in failing to sustain his motion to suppress the evidence which was seized as a result of an illegal search and seizure and that the court erred in admitting the evidence, at time of trial over his objections, for the same reason, allegedly all in violation of the defendant's Fourth Amendment Rights to be free of unreasonable search and seizure.

This Court has repeatedly held that warrantless searches conducted by police officers in the field, must rise or fall

on the individual facts and circumstances existing in each case. While most warrantless searches are at best questionable, there is an area of the law which renders the searches proper under certain circumstances. Mainly these exceptions are: was the search incident to a lawful arrest, was the search based on probable cause, i. e., a reasonable search. In the instant case we find both of these questions answered in the affirmative.

It is uncontroverted in this case that the arresting officer, Trooper Green, observed a misdemeanor committed in his presence, to-wit, speeding. Trooper Green had every right to make the arrest and was in a place he had a right to be at the time. The defendant himself admitted to the offense of speeding. [Tr. 44].

We now turn to the question of reasonableness and probable cause in this search. Once again, the testimony is clear that when the officers approached the occupants of the vehicle they immediately noticed unusual behavior on behalf of the occupants, particularly as being under the influence of drugs or narcotics. Several of the officers testified as to having noticed a faint odor of what they associated with marijuana about the defendant's automobile. Secondly, we find that the observation of the shoe box, which contained contraband, was not a search as defined by the laws of the State of Oklahoma or the United States, but that the shoe box was in plain view of the officers at the time they approached the vehicle while making a valid arrest. Once having observed the contents of the shoe box, along with the unusual physical characteristics of the defendant, the officers had probable cause to continue their search. In the recent case of *Davis v. State,* Okl.Cr., 514 P.2d 1195 (1973) this Court held:

"There is no question that the defendant was legally stopped and arrested for a traffic violation and that the five amphetamine pills were in the plain view of the arresting officers. This Court has consistently held under the 'plain view'

doctrine that the act of a peace officer's seeing such items did not constitute a search when the officer had the right to be in a position to see same. *Reynolds v. State,* Okl.Cr., 511 P.2d 1145 (1973); *Lloyd v. State,* Okl.Cr., 505 P.2d 1364; and *Battles v. State,* Okl.Cr., 459 P.2d 623."

Once again in *Ferguson v. State,* Okl.Cr., 520 P.2d 819 (1974), this Court held that having stopped the defendant for speeding and smelling the odor of marijuana and observing two partially burned, hand rolled cigarettes in the car's ashtray, the officer had sufficient probable cause to continue his search to a locked glove compartment for contraband and the seizure of marijuana was valid. Once again in the case of *Gaston v. State,* Okl.Cr., 457 P.2d 807 (1969), this Court held that once law officers found contraband in plain view they were then justified in continuing the search of the defendant's automobile for the contraband. Finally, the Supreme Court of the United States has addressed itself to this question in *Carroll v. U. S.,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The Supreme Court held that a lawful search of an automobile may be made without a warrant where there is probable cause to believe that it contains that which by law is subject to seizure.

In his excellent brief, counsel for defense urges that the search was not based on probable cause and was in fact, an exploratory search based on suspicions of the officer. We have consistently held that mere suspicion of officers does not rise to the dignity of probable cause and that suspicion will not justify the otherwise unlawful search. In support of his argument, defendant cites *Lawson v. State,* Okl.Cr., 484 P.2d 1337 (1971); *Gonzales v. State,* Okl.Cr., 507 P.2d 1277 (1973). We hold these cases distinguishable from the case at bar for the simple reason that under these cases the searches were based on mere suspicion. That is, the officers had no probable cause. This Court does not condone the search of a minor traffic of-

fender's automobile simply because "it seems like a good idea." But in neither case did the officers have the combination of facts before them which would give rise to probable cause. They had seen no contraband in plain view while being in a place they had a right to be.

We therefore hold that the evidence obtained as a result of a search and seizure in the instant case was rightfully admitted and that the motion to suppress the same was rightfully overruled. The search of the defendant's car was incident to a lawful arrest and predicated on probable cause given to the officers after having observed the conduct of the defendant and observing contraband in plain view before conducting a search.

We observe that the record is free of any error which would justify modification or reversal, and the judgment and sentence is, accordingly AFFIRMED.

BRETT, P. J., and BLISS, J., concur.