**Billy Dean BURNS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–978.**

Court of Criminal Appeals of Oklahoma.

May 23, 1979.

Christopher L. Coyle, Selby, Connor & Coyle, Bartlesville, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Clifford E. Briery, II, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

Appellant, Billy Dean Burns, appeals from the conviction of District Court, Washington County, Case No. CRF–75–354, Carrying a Firearm, After Former Conviction of a Felony, in violation of 21 O.S.1971, § 1283.

Appellant raises four errors which warrant discussion by this Court. First, he argues that the gun with the possession of which he is charged should have been suppressed as the fruits of an illegal search. Appellant and his two companions were stopped at approximately 1:30 in the morning by a police officer who testified that he stopped them, because he did not recognize the pickup they were riding in as belonging to anyone who lived in the area and because they did not look to him like coon hunters, the only people the officer thought should be on the road late at night. The driver of the truck did live on the road where they were stopped. The officer testified that at the time he stopped the pickup he knew only that there were three people in it and that two of them had long hair. He also knew that the police were looking for a bushy-haired white male wearing a white T-shirt and blue jeans and a white female wearing an orange and white blouse and blue jeans in connection with a possible armed robbery attempt earlier in the evening. The driver of the car testified that when the officer stopped him, the officer had his gun drawn and cocked and that he stuck it in the driver's stomach when he got out of the car.

The officer testified he had his gun drawn, but that he did not aim it at the driver and that he did not have the gun cocked. The officer told the passengers in the car to get out of the pickup, and they got out with their hands up at gunpoint. At that point, the officer testified that he recognized that the two passengers fit the description of the two persons for whom the police were looking, so he handcuffed all three and searched the pickup, although none of the three was in reach of anything in the pickup and although none of the

three was offering any resistance. Inside the pickup, the officer found a .38 caliber revolver in a wadded up bath towel on the seat.

The driver of the pickup testified that the towel, which he hadn't known had a gun in it was in the possession of the appellant's female companion at all times when he was with them, and the appellant's companion testified it was her gun, it had been in her possession all evening, and that as far as she knew, the appellant was not aware that she had it.

This Court has previously upheld the legality of investigatory stops by police officers, both where the person stopped was acting suspiciously and where the officers are making routine inquiries of persons found near the scene of a crime in time and place. See *Prock v. State*, Okl.Cr., 542 P.2d 522 (1975); *Lloyd v. State*, Okl.Cr., 505 P.2d 1364 (1973). However, investigatory stops are not made at gunpoint, and the officer testified that he did not know that the defendant and his female companion met the description of the two persons who had purportedly been involved in an armed robbery attempt earlier in the evening until after they were out of the car. The officer knew that the suspects in the purported robbery attempt had been involved in a two car automobile accident and had fled on foot, and by the time the two passengers got out of the car with their hands up, he also knew that the driver of the pickup was taking the two to meet a friend, because their car was in a ditch.

■ This Court has previously stated that arrest occurs at the time a person's freedom of action is restricted and he is subject to the control of the arresting officer. See *Howell v. State*, Okl.Cr., 530 P.2d 1371 (1975). By statute, arrest is the "taking of a person into custody, that he may be held to answer for a public offense." Title 22 O.S.1971, § 186. In the instant case, we must say that when the pickup was stopped and all three persons in the vehicle were ordered out at gunpoint, the arrest took place. At that time, the officer knew no more than that he was stopping a pickup

which he did not recognize and which had three people in it. Therefore, the arrest was not authorized by 22 O.S.Supp.1978, § 196, and any evidence gained as a result of the illegal arrest, including the gun found on the seat of the truck, was illegally seized and should have been suppressed.

■ We are not unmindful of the recently decided case of *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), in which the United States Supreme Court determined that a passenger in a car, who asserted no ownership rights in the automobile searched or in the property seized, under the particular facts of that case, had not had his own Fourth Amendment rights infringed by an illegal search and seizure of the car and therefore could not object to the lawfulness of the search. In our case, the crime charged was possession of a firearm, and it seems a bizarre result to us to require that in order for the defendant to be allowed to question the validity of the search, he must admit to the crime, i. e., admit to the possession of the weapon. The Court in *Rakas, supra*, at page 426, points out that *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), set forth two rules:

> "[I]t established a rule of 'automatic' standing to contest an allegedly illegal search where the same possession needed to establish standing is an essential element of the offense charged; and . ., it stated that 'anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress.' . . ." (Citations omitted, footnotes omitted)

While the Court overruled the second of the two holdings, in footnote 4 on the same page it specifically stated that it has not had an opportunity to decide whether the automatic standing rule set out in the first holding will survive. As the United States Supreme Court has not yet reached that issue, we must follow the rule set out in *Jones v. United States, supra*.

■ Next, the appellant argues that he was prejudiced by the denial of his request for a transcript of his earlier trial in this

cause, which ended in a mistrial. It is apparent from the trial transcript that the lack of a transcript of the previous trial thwarted the appellant in his attempts to impeach the testimony of the witnesses. Furthermore, we find the State's argument that as the trials took place in a small town we should assume that the lawyer for the defense and the court reporter knew each other and that the court reporter would have been willing to have read the transcript of the earlier trial to the defense attorney to be unpersuasive, to say the least. However, nowhere in the record is there evidence of a request by the defendant for such a record at state expense, nor is there evidence that such a request was turned down, so any error was not preserved.

■ Next, the appellant argues that he should have been given his requested instruction on circumstantial evidence. This Court has held many times that an instruction on circumstantial evidence is not needed unless the State's case is wholly circumstantial. See inter alia, *Burroughs v. State*, Okl.Cr., 528 P.2d 714 (1974); *McDaniels v. State*, Okl.Cr., 520 P.2d 693 (1974); *Hale v. State*, Okl.Cr., 506 P.2d 924 (1973). Although the State never established that the appellant was in possession of the firearm which was seized from the pickup in which he was riding, there was direct testimony that he was in possession of a gun earlier in the evening. That the appellant considers that direct evidence not to be credible is of no moment. Therefore, an instruction on circumstantial evidence was not necessary.

■ Finally, the defendant argues that the court invaded the province of the jury in commenting on the facts of the case, preventing the appellant from having a fair trial. A stipulation was entered that recites, after the jury was instructed, it deliberated for two and a half hours before it returned and informed the court that it was deadlocked. At that time, the judge told the jury that the facts of the case were as clear as they could be, that the instructions given to them were the simplest the court could recall giving to a jury, and that the

case could be decided one way or the other. He told them to deliberate for at least another 30 minutes as they were as good a jury as could be had reflecting the views of the community and that they owed it to both the State and the appellant to arrive at a verdict. Five minutes later, the jury found the appellant guilty. This Court has previously stated in *Robinson v. State*, Okl. Cr., 556 P.2d 286 (1976), that such comments are not an expression of the court's opinion of the evidence but rather merely state that the case could be decided one way or the other.

In light of the illegality of the arrest as discussed in proposition one above, this conviction is *REVERSED* and *REMANDED* to the District Court for further proceedings not inconsistent with this opinion.

CORNISH, P. J., concurs.

BUSSEY, J., dissents.

BUSSEY, Judge, dissenting:

In my view, the majority has attached insufficient significance to the threshold issue of Defendant's right to challenge admission of the handgun into evidence on Fourth Amendment grounds. This issue is decisive. The majority resolved this question by according Defendant "automatic standing" under *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697. However, the *Jones* automatic standing rule is only applicable where the offense charged against the accused requires, as an essential element for conviction, proof of possession by accused at the time of the search and seizure. *Jones v. United States, supra*, 362 U.S. at 263, 80 S.Ct. 725; *Simmons v. United States*, 390 U.S. 377, 390, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Brown v. United States*, 411 U.S. 223, 227, 93 S.Ct. 1565, 36 L.Ed.2d 208; *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 426, 58 L.Ed.2d 387. In the instant case, the possession which underlay the offense charged was defendant's possession at Mary's Lounge in Dewey, Oklahoma, at about 10:30 p. m. on the evening of June 6, 1975. This was recognized by the magistrate at preliminary hearing where he stat-

ed, in response to defendant's contention that the State had failed to make out the illegal possession alleged in the information, that "Mr. Clapp's testimony [testimony of the victim of the assault at the bar] was sufficient to show the man was in possession of the firearm." Preliminary transcript, page 61. This possession occurred three hours or more before the search and seizure took place. Here, as in *Brown*, "[t]he vice of allowing the Government to allege possession as part of the crime charged, and yet deny that there was possession sufficient for standing purposes, is not present. The Government cannot be accused of taking 'advantage of contradictory positions.'" [Citations omitted]. *Brown v. United States, supra*, 411 U.S. at 229, 93 S.Ct. at 1569. This is simply not a proper case for invocation of *Jones* "automatic standing."

Given that defendant may not claim "automatic standing", defendant was required to affirmatively establish his right to challenge the admission of the pistol on Fourth Amendment grounds. Previously, the inquiry has been phrased in terms of "standing," and the accused was required to show ownership or possession of the seized evidence, or a possessory interest in the premises searched, or his legitimate presence on the premises at the time of the search, or circumstances sufficient to invoke automatic standing. *Jones v. United States, supra*. However, after the recent decision of *Rakas v. Illinois, supra*, it is clear that the issue is properly stated in terms of whether the accused's substantive Fourth Amendment rights have been violated, i. e. whether accused has shown a reasonable expectation of privacy infringed by the search and seizure in question. Id., 439 U.S. 128, at 139, 148, 99 S.Ct. 421, at 428, 433. A claimed possessory or proprietary interest in the place searched or thing seized likely indicates the requisite expectation of privacy, id., Fn. 12, 439 U.S. at 143, 99 S.Ct. at 430, while legitimate presence on the premises at the time of the search is no longer controlling, id., 439 U.S. at 148, 99 S.Ct. at 433. Viewed in this posture, it seems clear that defendant has failed to make the required showing. At no point in this prosecution has defendant alleged a possessory or proprietary interest in the pickup truck or handgun. Moreover, testimony offered by defendant's companion and the driver of the pickup affirmatively indicated that the handgun was owned and possessed at the time of the search by the companion. Also, as discussed above, he is not aided by the *Jones* automatic standing rule. No legitimate expectation of privacy is otherwise apparent from the record. The handgun merely corroborated other testimony positively identifying defendant as the man who brandished a handgun and pointed it at a patron at the bar earlier in the evening.

I would affirm.