Arthur BEARDEN, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14051.

Court of Criminal Appeals of Oklahoma.

July 26, 1967.

Wilhite & Buzbee, Anadarko, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Plaintiff in Error, Arthur Bearden, hereinafter referred to as defendant, was charged by information in the County Court of Caddo County, Oklahoma with the offense of "intentionally, wilfully, and unlawfully driving, operating and being in actual physical control of a motor vehicle while under the influence of intoxicating liquor". He was tried by a jury, found guilty, and sentenced to pay a fine of $300.00, and 30 days in the County Jail. From that judgment and sentence he has appealed to this Court alleging numerous assignments of error.

It will not be necessary for this Court to go into each and every one of the allegations, and we will only discuss the first proposition of error—that the trial court erred in refusing to give defendants Requested Instruction No. 1—that it constitutes prejudicial error for there was no competent evidence that the defendant either drove, operated, or was in actual physical control of the pickup involved.

The record reveals that witness for the state, Wade Hilton, received two calls with respect to the accident; that it was approximately 45 minutes after he received the first call before he reached the scene of the accident. This witness notified Eddie Mackey, Acting City Marshal at Binger, Oklahoma, with respect to the call and that Mackey reached the scene of the accident prior to the time that Hilton did. When Hilton reached the scene of the accident, he saw the pickup hanging partially off the shoulder of the road with the end of it in the bar ditch. This witness further testified:

"Q. All right. Now did you see that pickup move at all until you moved it?

A. The pickup was in exact the same place when I got there until I hooked on to it to move it.

Q. You didn't see it move?

A. *I didn't see it move.* (Emphasis ours.)

Q. You saw no one operate it or drive it, did you?

A. Outside of Mr. Bearden open the door, getting in and out, that's all that I seen the pickup anything happen.

Q. Well it wasn't, opening the door and getting in with the assistance of Mr. Mackey, or insistence or whatever it was, that wouldn't move the pickup, would it?

A. *No, he wasn't, the pickup wasn't in operation.* (Emphasis ours.)"

Acting City Marshal Eddie Mackey testified, as follows:

"Q. What did you observe when you reached the scene of the accident, if anything?

A. Do you mean what did I see?

Q. Yes.

A. *The person involved was outside the pickup laying down on the ground.* I walked up to him and shook him and at first he didn't move and then I asked him if he was hurt and he said no. *So he got up and I put him back into the pickup.* (Emphasis ours.)"

On cross-examination Mackey testified that he was not sure but it was approximately thirty minutes after he received the call from Mr. Hilton with respect to the accident before he reached the scene. He testified further:

"Q. *Now you never saw Mr. Bearden in this truck until you picked him up and put him back in there did you?*

A. *No, sir.*

Q. *And when you got there no one was in charge of that truck, was they?*

A. *No, sir.* (Emphasis ours.)

Q. I'll ask you if it isn't true that after you put him in the truck he tried to get out and you refused to let him out?

A. Well, no, he was trying to get out in the highway and I thought that it would be safer for him in the pickup than it would be out in the highway.

Q. You wouldn't let him out of the truck after you picked him up and put him back in there would you?

A. Will, I don't believe, I forced him to stay in it if that's what you mean.

Q. Well, you prevented him from getting out didn't you?

A. Well, you might say that, yes.

Q. All right. I'm not going to say anything because I wasn't there, but do you say that that's true? You prevented him from getting—you picked him up off the ground, put him in the pickup truck?

A. Yes, sir.

Q. And then when he wanted to get out you prevented him from doing it, is that right?

A. I told him that it would be better if he stayed in the pickup.

Q. Well just now you said that it might be that way if you prevented him. Did you prevent him from getting out?

A. Yes, sir. Yes, sir.

Q. All right. That's all I'm trying to find out. When you put him back in that pickup, did you remove the keys from the pickup?

A. No, sir, I did not.

Q. *But you never saw that pickup move that afternoon or night, did you?*

A. You mean, what do you mean, see it move?

Q. *Drive up the highway or travel on the highway?*

A. *No, sir.*

Q. *It was standing still when you got there?* (Emphasis ours.)

A. *Yes, sir.*

Q. No one was in it until you picked up Mr. Bearden and put him in it?

A. *That's right."* (Emphasis ours.)

The third and last witness for the state was Trooper Filmore Edgmon, who testified that he arrived at the scene of the accident

at 11:25 P.M., and observed the pickup on the South side of the road in the bar ditch. He further stated:

> "Q. Fil, a while ago you used the word 'the truck traveled' or was traveling, I think you said, 165 feet and *you didn't see that truck move at all, did you?*
>
> A. You mean the pickup?
>
> Q. The pickup.
>
> A. *No, sir.* (Cm 32)
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Q. *And you never saw this truck move?*
>
> A. *No, sir.* (Cm 34)
>
> Q. *You never saw him try to operate it?*
>
> A. *No, sir."* (Cm 35) (Emphasis ours.)

Hilton, Mackey, and Edgmon were the only witnesses who testified on behalf of the State, and none of them testified that they saw the truck move, that they saw anyone operating it, or in actual physical control of the vehicle. Mackey further testified that he never saw defendant in this truck until he put him in there and that when he reached the scene there was no one in charge of that truck. For all practical purposes defendant was under arrest from the time that Night Watchman Mackey arrived at the scene and placed him inside the pickup.

 This Court has recently, on January 18, 1967, ruled on the statute in question, 47 O.S.A., § 11–902, in the case of Parker v. State, Okl.Cr. 424 P.2d 997, stating:

> "1. It is unlawful and punishable by law, for any person who is under the influence of intoxicating liquor to drive, operate, or be in actual physical control of any motor vehicle within this State. 47 O.S.A. § 11–902(a)
>
> 2. Actual physical control, as used in Title 47, supra, means: existing or present bodily restraint, directing influence, domination or regulation of any automobile, while under the influence of intoxicating liquor.
>
> 3. If a person has existing or present bodily restraining, directing influence, domination or regulation of an automobile, while under the influence of intoxicating liquor, he commits an offense within the provisions of the statute.
>
> 4. Title 47, O.S.A. § 11–902(a) is constitutional.
>
> 5. Title 47, supra, defines two distinct offenses: one being, it is unlawful for any person under the influence of intoxicating liquor to drive or operate any motor vehicle within this State; and the other being, it is unlawful for any person who is under the influence of intoxicating liquor to be in actual physical control of any motor vehicle within this State."

Therefore, the only decisive issue for this Court to decide is whether, under the evidence presented by the state, the defendant was in *actual physical control* of the vehicle; or, did defendant have existing, or present bodily restraint, directing influence, domination or regulation of any automobile, while under the influence of intoxicating liquor?

 It is readily apparent from the evidence that he did not. It is, therefore, the opinion of this Court that the trial judge erred in not directing the jury to find the defendant "Not Guilty" under the evidence presented.

And, it is the further order of this Court, that this cause be reversed and remanded to the trial court, with instructions to dismiss.

BRETT and BUSSEY, JJ., concur.