2000 OK CIV APP 28

**David R. WILSON, Plaintiff/Appellee,**

v.

**STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.**

**No. 93,237.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Dec. 28, 1999.

---

Gary Barger Purcell, Oklahoma, For Appellee.

J. Robert Blakeburn, Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, For Appellant.

## OPINION

TAYLOR, J.

¶ 1 Appellant, the State of Oklahoma ex rel. Department of Public Safety, seeks review of the trial court's order setting aside the Department's revocation of Appellee David Wilson's driver's license. Based on the record and applicable law, we reverse and remand for further proceedings.

¶ 2 The essential and undisputed facts are that at about two in the morning on October 16, 1998, a passing motorist notified two City of Purcell police officers that a car had gone into a ditch near an off-ramp on Interstate 35. The officers drove to the scene and found a Chevrolet Suburban stuck on top of a cement culvert in a drainage ditch, with the rear bumper up on the ground and the rear tires spinning and kicking up dirt. Wilson was behind the wheel, gunning the engine.

¶ 3 The officers followed several hundred feet of skid marks from the vehicle back to the highway, finding a portion of the truck's rearview mirror next to a support pillar and noticing paint transfer from the vehicle on the pillar and a guardrail. According to one of the officers, this evidence indicated that the vehicle skidded off the ramp into the guardrail, struck the support pillar, swerved first to the left and then to the right, then slid off into the drainage ditch, hitting the culvert.

¶ 4 The officer testified he yelled to the driver to turn off the engine. Wilson re-

sponded, "I'm trying to get out of the ditch." The officer yelled again and when he received no response, reached in and turned the motor off. The officer then noticed a very strong odor of alcohol on Wilson's breath. The officer asked Wilson to get out of the truck. With some difficulty, Wilson removed his seat belt and got out. Then, according to the officer:

As he got out of the vehicle, he took about two steps, fell right to the ground. At that time, Officer Yingling and I picked him up, and I—at that time is when I asked him—I said, "Have you been drinking?" And he said, "Not much."

Q. So then what did you do?

A. I then asked Mr. Wilson if he'd had anything to drink since the accident. He said, "What accident?" I was just—I have to look again here. He said, "What accident? I didn't have any accident. I'm stuck."

¶ 5 The officer placed Wilson under arrest for driving under the influence. He took Wilson to the McClain County Sheriff's Department, where Wilson consented to a breathalyzer test. The results showed a .17 alcohol concentration, which is over the legal limit.

¶ 6 The Department subsequently revoked Wilson's driver's license. Wilson demanded an administrative hearing and the Department sustained the revocation. Wilson then filed a petition for a trial de novo in district court.

¶ 7 The trial court held a hearing in which only the two officers testified. Following their testimony, Wilson demurred, asserting the officers had insufficient grounds to arrest him because his vehicle was inoperable at the time they arrived and because no evidence showed who was driving the car at the time of the accident. The trial court then set aside the revocation, stating it was doing so because "there is no credible evidence the vehicle Plaintiff was found seated in was operable." The Department appeals.

■ ¶ 8 The scope of a revocation hearing includes "the issues of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol ... and whether the person was placed under arrest." 47 O.S. Supp.1999 § 754(F). Thus, Oklahoma law requires, and appellate courts have consistently held, that a valid arrest is essential to invoke the statutes giving a police officer the right to request a driver submit to a chemical test for blood alcohol. *Smith v. State ex rel. Dep't of Pub. Safety*, 1984 OK 16, 680 P.2d 365; *Richards v. State ex rel. Dep't of Pub. Safety*, 1994 OK CIV APP 41, 872 P.2d 957.

■ ¶ 9 On that point, Oklahoma law allows a police officer to make a valid arrest without a warrant "[w]hen he has probable cause to believe that the party was driving or in actual physical control of a motor vehicle involved in an accident upon the public highways, streets or turnpikes and was under the influence of alcohol...." 22 O.S.1991 § 196(5). Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense had been or was being committed. *DeVooght v. State*, 1986 OK CR 100, 722 P.2d 705.

■ ¶ 10 The trial court stated it was setting aside the revocation because there was no credible evidence that when the officers arrived on the scene, William's vehicle was operable. The facts show the car was stuck, even though Wilson was revving the engine and the wheels were turning. The trial court appears to have concluded that because the vehicle could not move, the arresting officers did not have probable cause, for purposes of the statute, to believe Williams was driving or had physical control of the vehicle; and, without probable cause, the officers did not make a valid arrest. Thus, the trial court's decision turned on its interpretation of the statutes. Statutory construction is a matter of law, and we will review de novo a trial court's determination of statutory language. *Holt v. State ex rel. Okla. Dep't of Transp.*, 1996 OK CIV APP 101, 927 P.2d 57. "De novo" means no defer-

ence, not necessarily a full rehearing or new factfinding. *Bose Corp. v. Consumers Union of United States,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

¶ 11 On their face, the statutes do not require that the vehicle involved be operable at the moment police come on the scene of an accident or when police make an arrest. The statutes required the officers to have probable cause to believe Wilson *had been* driving or *was* in actual physical control of a vehicle involved in an accident. Direct evidence is not required to prove probable cause. *DeVooght,* 1986 OK CR 100, ¶ 11, 722 P.2d at 709.

¶ 12 It is hard to imagine a case with stronger circumstantial evidence as to probable cause than the one before us. Wilson was found behind the wheel of a vehicle that clearly had been involved in an accident. The motor was running, and Wilson was revving the engine in order to—in his own words—get the vehicle out of the ditch. This evidence is plainly sufficient to give the officers probable cause to conclude Wilson had been driving or was in physical control. To require that the vehicle must be operable, as Wilson argues, flies in the face of the evidence. It would also lead to a result that an officer could make a warrantless arrest following a minor traffic accident, but not in the aftermath of a more serious accident where the vehicles involved are destroyed. There is no indication the legislature intended such an anomalous result, and there is no language in the statute to require it.

¶ 13 Furthermore, case law does not lead to the conclusion that the term "actual physical control" requires the car be operable. The phrase was analyzed by the Oklahoma Court of Criminal Appeals in *Mason v. State,* 1979 OK CR 132, 603 P.2d 1146, albeit in the context of a conviction for driving or being in actual physical control of a vehicle while under the influence. The Court noted that it had previously defined "actual physical control" as " '[e]xisting' or 'present bodily restraint, directing influence, domination or regulation' " of a vehicle. *Id.* at ¶ 5, 603 P.2d at 1148. In *Mason,* the arrested driver was unconscious and intoxicated in a vehicle with the engine running and his legs close to the

pedals. The Court held that by starting the engine, the driver undoubtedly "directed influence" over the automobile and was in "actual physical control." *Id.* at ¶ 8, 603 P.2d at 1148. It further noted it had previously held that a driver was in actual physical control of a vehicle when the keys were merely in the vehicle's ignition and the driver was unconscious. The Court upheld the driver's conviction.

¶ 14 If "actual physical control" can be said to exist in *Mason,* it certainly exists in the instant case. Wilson was not unconscious, but admittedly trying to drive. His vehicle was not turned off or even idling, but revving due to his attempts to get the car moving. The trial court therefore erred in setting aside the license revocation due to the car's inoperability.

¶ 15 Wilson relies on *Lambert v. State,* 1987 OK CR 246, 745 P.2d 1185, in which the driver of a wrecked car walked to a farmhouse and was given a ride home by the farmer. Over an hour later, the farmer told the investigating officer that he had taken the driver home and that the driver appeared drunk. The farmer and the officer went to the driver's home, and the farmer knocked on the door and called out to the driver, asking him if he was alright. The driver said "yes," and the officer entered the home, observed the driver, and arrested him for driving under the influence. The Court of Criminal Appeals held that the driver's arrest was unconstitutional.

¶ 16 *Lambert* is distinguishable from the case at bar for two reasons. First, the *Lambert* court based its decision on the fact that the officer made a warrantless intrusion into the driver's *home* prior to the point where probable cause to arrest existed. Second, though Wilson asserts the evidence in *Lambert* is far greater than the evidence presented in the instant case, the opposite, as detailed above, is true.

¶ 17 Wilson asserts in his brief that the driver of the car at the time of the accident was unknown, and suggests that another person had been driving but fled after the accident, to be replaced behind the

wheel by Wilson. The answer to this assertion is that, at most, Wilson's theory presents a question for the trier of fact. He is free to assert it at trial.

¶ 18 For the reasons given, the decision of the trial court is reversed and this matter is remanded for further proceedings.

¶ 19 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

GOODMAN, V.C.J., and RAPP, J., concur.