129 P.3d 177 (2005)
2006 OK CIV APP 8
Jeffery S. SIMIC, Plaintiff/Appellant,
v.
STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.
No. 102,386.
Court of Civil Appeals of Oklahoma, Division No. 2.
December 30, 2005.
Royce A. Hobbs, Stillwater, OK, for Plaintiff/Appellant.
Kevin L. McClure, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellee.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 2.
*178 Opinion by DOUG GABBARD II, Judge.
¶ 1 Plaintiff, Jeffery S. Simic, seeks review of the trial court's order sustaining a decision by the Department of Public Safety (DPS) revoking Simic's driver's license under Oklahoma's "implied consent" statutes, 47 O.S. 2001 & Supp.2005 §§ 751 through 754. The sole issue on appeal is whether Simic was subjected to a valid arrest by an Oklahoma State University (OSU) campus police officer. For the reasons set forth below, we find the arrest was valid, and affirm the trial court's decision.

FACTS
¶ 2 The parties have stipulated to the basic facts, as follows:
On August 18, 2004, at approximately 1:45 a.m., Officer Justin Hart, of the OSU Police Department in Stillwater, observed a pickup truck driven by Simic traveling north on Knoblock Street adjacent to the OSU campus. The truck ran a stop sign at the corner of Knoblock and Athletic streets and turned east onto Miller Street, traveling away from the campus. Hart followed and observed the truck make a wide turn northbound onto Duck Street  at a point about one block south of the campus  and strike the east curb. Hart continued following the truck, and activated his emergency lights in the vicinity of the area where Duck crosses Mathews Street and is again adjacent to OSU property. The pickup truck pulled into a gas station on the corner of Hall of Fame *179 Avenue and Duck streets, immediately adjacent to the OSU campus.[1]
¶ 3 After approaching the truck Hart detected an odor of alcoholic beverage on Simic's breath. Hart asked how much Simic had had to drink, and Simic responded, "Not much." Simic exited the pickup, and Hart noted that Simic needed to use the vehicle for support, and that he had bloodshot eyes and slurred speech. Simic also failed a field sobriety test. Based on Simic's driving behavior, appearance, and performance on the field sobriety test, Hart arrested him and took him to the Payne County Sheriff's office. There, Simic was given an "implied consent advisory" pursuant to 47 O.S. Supp. 2005 § 754. He refused to submit to a blood or breath test, resulting in DPS's automatic revocation of his license.
¶ 4 The parties also stipulated that in November 1991 OSU and the City of Stillwater entered into a "Police Services Agreement" (the Agreement), a copy of which was included in the record. The Agreement recognizes the jurisdiction of OSU campus police officers as extending to "all property, including streets, highways, roads, alleys, easements, and other public ways or public areas, owned, leased, or rented by" OSU, including public ways and areas "surrounded or primarily surrounded by" OSU, and "all property ... adjacent to [OSU-] owned, leased, or rented property and adjacent to property ... surrounded or primarily surrounded by [OSU-] owned, leased, or rented property." The Agreement further provides:
The OSU Police Department and its duly commissioned and certified officers are further authorized to exercise their power and authority as peace officers within the police jurisdiction of Stillwater in the following situations:
(a) When requested by any City Police Officer.
(b) When necessary to complete any enforcement activities which began on [OSU] property or property adjacent thereto.

. . .
¶ 5 Following a DPS hearing upholding the revocation, Simic sought review in district court, moving to quash the evidence based on the argument that the arrest was invalid because Hart was outside his jurisdiction. The trial court found that Hart was outside his jurisdiction; however, it upheld the validity of the arrest because Simic committed an "offense" in Hart's presence, thus entitling Hart to effect an arrest. The trial court therefore denied Simic's motion to quash and sustained DPS's six-month revocation of Simic's license.
¶ 6 Simic appeals. Simic asserts that, because Hart was outside his jurisdiction when he arrested Simic, the arrest was not valid and could not form a basis to revoke Simic's license. Simic does not challenge the fulfillment of all other conditions relevant to applying the implied consent statutes, 47 O.S. 2001 & Supp.2005 §§ 751 through 753.[2]

STANDARD OF REVIEW
¶ 7 When reviewing an order of an implied consent driver's license revocation, "the appellate courts may not reverse or disturb the findings below unless the lower court's determinations are found to be erroneous as a matter of law or lacking sufficient evidentiary foundation." Abdoo v. State ex rel. Dep't of Pub. Safety, 1990 OK CIV APP 2, ¶ 11, 788 P.2d 1389, 1393. Because this matter was submitted by the parties on stipulated facts, it presents for review a question of law. Baptist Bldg. Corp. v. Barnes, 1994 *180 OK CIV APP 71, ¶ 5, 874 P.2d 68, 69. As such, "it is the duty of this court on appeal to apply the law to such facts as a court of first instance and direct judgment accordingly." Rist v. Westhoma Oil Co., 1963 OK 126, ¶ 7, 385 P.2d 791, 793. Questions of law are reviewed de novo, meaning they are subject to an appellate court's "plenary, independent, and nondeferential reexamination." Fine Airport Parking, Inc. v. City of Tulsa, 2003 OK 27, ¶ 7, 71 P.3d 5, 9.

ANALYSIS
¶ 8 A valid arrest is a prerequisite to the application of Oklahoma's implied consent law. Smith v. State ex rel. Dep't of Pub. Safety, 1984 OK 16, ¶ 3, 680 P.2d 365, 367 (valid arrest is necessary to invoke statutory provisions giving a police officer the right to request a driver submit to a chemical test for blood alcohol). The parties do not dispute that, generally, an officer's authority to effect a valid arrest does not extend beyond his or her jurisdiction. Staller v. State, 1996 OK CR 48, 932 P.2d 1136. They also agree that, with only a few exceptions, a law enforcement officer operating within his or her jurisdiction cannot effect a valid warrantless arrest for a misdemeanor unless the officer witnesses, first-hand, the alleged illegal act of the arrestee. Hill v. State, 1956 OK CR 65, 298 P.2d 1066; see also 22 O.S.2001 § 196.
¶ 9 It is true, as DPS argues, that Oklahoma appellate courts have held that if a police officer is outside his jurisdiction, and witnesses a public offense, the officer has the same authority as a private person to effect a "citizen's arrest" pursuant to 22 O.S.2001 § 202, under which a private person may effect an arrest for a "public offense committed or attempted" in the person's presence. See e.g., Nickell v. State, 1987 OK CR 260, 746 P.2d 1155 (Blackwell police officer observing "public offense" of theft outside his jurisdiction may make citizen's arrest); Molan v. State, 1980 OK CR 55, 614 P.2d 79 (city police officers' arrest of robbery suspects for crime committed outside the officers' jurisdiction was valid citizen's arrest where probable cause existed to make arrest); Moran v. State, 1951 OK CR, 95 Okla. Crim. 6, 237 P.2d 920 (municipal police officer who found accused outside city limits on public highway in drunken condition had right to make arrest); Mings v. State ex rel. Dep't of Pub. Safety, 1996 OK CIV APP 136, 930 P.2d 832 (city police officer had authority to make citizen's arrest of motorist based on misdemeanor driving offense that occurred outside his jurisdiction).
¶ 10 However, the Court of Criminal Appeals also has specifically held that a campus police officer may not make an arrest outside school property when he is "acting in [the] capacity" of a campus police officer. In Richardson v. State, 1973 OK CR 297, 511 P.2d 1127, the Court invalidated a campus police officer's off-campus arrest of an individual for driving under the influence. The Court held that the officer lacked jurisdiction while "acting in [the] capacity" of a campus police officer to make the arrest. Id. at ¶ 3, 511 P.2d at 1127. Similarly, in Courange v. State, 1973 OK CR 273, 510 P.2d 961, the Court invalidated an arrest by a campus police officer who stopped the defendant on an off-campus street "by means of flashing red lights, signaling said defendant to stop." Id. at ¶ 2, 510 P.2d at 961. The court held that "a campus police officer, acting in that capacity," did not have "the power and authority to make arrests on property not owned by the University." Id. at ¶ 3, 510 P.2d at 962.[3]
¶ 11 Applying the foregoing to the case at bar leads to the conclusion that the trial court erred to the extent it found that, even if Hart was outside his jurisdiction, he nonetheless made a valid "citizen's arrest" under 22 O.S.2001 § 202. It is undisputed *181 that Hart stopped Simic by flashing his lights and acting in his capacity as a campus police officer. Thus, under the holdings of Richardson and Courange, Hart could not have effected a valid arrest of Simic  if Simic was indeed outside Hart's jurisdiction.
¶ 12 Our disagreement with the trial court's reasoning, however, does not require reversal of its decision if we agree with its ultimate conclusion. "It is well settled that a correct judgment will not be disturbed on review, even when the trial court applied an incorrect theory or reasoning in arriving at its conclusion ..." Harvey v. City of Oklahoma City, 2005 OK 20, ¶ 12, 111 P.3d 239, 243. If we find that the lower court reached the correct result  even if for the wrong reason  we will sustain its ultimate decision. Alimenta, U.S.A. v. Sawyers, 1982 OK CIV APP 41, ¶ 9, 654 P.2d 660, 661-62.
¶ 13 As noted above, the parties stipulated that OSU and the City of Stillwater entered into the Agreement expanding the jurisdiction of OSU campus police officers to "all property ... adjacent to [OSU-]owned, leased or rented property and adjacent to property ... surrounded or primarily surrounded by [OSU-]owned, leased, or rented property." Such agreements are specifically authorized by the "Oklahoma Campus Security Act," 74 O.S.2001 §§ 360.15 through 360.21.
¶ 14 Under § 360.17:
A. The jurisdiction of campus police officers includes the campus and pursuant to an agreement authorized by this act, the highways, streets, roads, alleys, easements, and other public ways immediately adjacent to their campus and any other areas authorized by such agreement. This delineation of jurisdiction however, shall not be understood as limiting the completion of any necessary enforcement activities which began within these jurisdictions and are in compliance with the agreements made with the municipality or county sheriff pursuant to this act.... In addition, a campus police officer shall have jurisdiction in other locations pursuant to an agreement authorized by this act. Such agreement may authorize the chief administrative officer of the law enforcement agency to request assistance pursuant to the agreement. Campus police officers, commissioned pursuant to this act, shall have the same powers, liabilities, and immunities as sheriffs or police officers within their jurisdiction.
¶ 15 In State v. Ockershauser, 1996 OK CR 42, 924 P.2d 775, the Court of Criminal Appeals upheld a § 360.17 agreement between the University of Oklahoma and the City of Norman, despite a criminal defendant's claim that the agreement was unconstitutionally vague. The Court held that the agreement  which contained terms virtually identical to those in the OSU-City of Stillwater Agreement  "confer[red] jurisdiction with a reasonable degree of certainty," and deemed valid a DUI arrest by a campus officer who initially observed a violation on a street adjacent to the University. Id. at ¶ 10, 924 P.2d at 777.
¶ 16 In the present case, the parties stipulated that Simic's original violation  running a stop sign  occurred on a street adjacent to the OSU campus; that Hart observed him there and followed him through an area surrounded by apartments with "largely student occupancy near the OSU campus"; and that Hart stopped Simic and effected his arrest at a location which is adjacent to the campus. It also is undisputed that the Agreement extends jurisdiction of campus police officers to property, including streets, adjacent to the OSU campus. It further authorizes campus police to "exercise their ... authority as peace officers within the police jurisdiction of Stillwater" at any time necessary to "complete any enforcement activities which began on [OSU-] property or property adjacent thereto."
¶ 17 We find the circumstances of this case fall squarely within those contemplated by the OSU-Stillwater Agreement. Based on our review of the entire record, we therefore hold that Hart was within his jurisdiction, and properly exercised his authority at the time he arrested Simic. The arrest was valid, and the trial court's decision sustaining DPS's revocation of Simic's license was *182 therefore correct. Accordingly, its decision is affirmed.
AFFIRMED.
REIF, P.J., and WISEMAN, J., concur.
NOTES
[1] According to the parties' stipulation:

Where the pickup ran the stop sign at Knoblock and Athletic is adjacent to the OSU campus; where the pickup made a "wide-turn" and "hit the curb" is one block east of the campus; where [Officer Hart] activated his lights is either adjacent to the campus or slightly south of the campus; where [Simic] was stopped was adjacent to the campus.
[2] Those conditions are (1) that there were reasonable grounds for Hart to believe Simic was driving under the influence of alcohol; (2) that Simic was informed that his license to drive would be revoked or denied if he refused to submit to a test; and (3) that Simic refused to take the test. See Smith v. State ex rel. Dep't of Pub. Safety, 1984 OK 16, ¶ 6, 680 P.2d 365, 368, McKeever v. State ex rel. Dep't of Pub. Safety, 2001 OK CIV APP 79, ¶ 9, 25 P.3d 301, 304.
[3] While the Court of Criminal Appeals has not specifically refused to recognize that a campus police officer may make a "citizen's arrest," it generally appears reluctant to recognize that campus police officers may exert the same "private citizen" authority when they travel outside their jurisdiction as has been recognized for county and municipal law enforcement officers. See e.g., Smith v. State, 1973 OK CR 274, 510 P.2d 962 (arrest for driving under the influence invalidated when made by campus officer who observed offense occur off campus and made arrest off campus; citizen's arrest statute held inapplicable because of length of time between the arrest and submission to authorities).