2007 OK CIV APP 99

STATE of Oklahoma, ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant,

v.

Shaun Eric KELLEY, Plaintiff/Appellee.

No. 103,942.

Court of Civil Appeals of Oklahoma, Division No. 3.

Aug. 10, 2007.

Certiorari Denied Oct. 15, 2007.

A. DeAnn Taylor, Deputy Chief Legal Counsel, Oklahoma Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.

Thomas W. Hosty, Oklahoma City, OK, for Plaintiff/Appellee.

BAY MITCHELL, Vice–Chief Judge.

¶1 Plaintiff/Appellee Shaun Eric Kelley was asleep in the back of his Chevrolet Tahoe, which was parked in the parking lot of a bar, when Officer Kushmaul with the Edmond Police Department awakened him, administered a field sobriety test, and arrested him for being in actual physical control of a vehicle (APC) while under the influence of alcohol in violation of 47 O.S. Supp.2006 § 11–902(A). Defendant/Appellant State of Oklahoma *ex rel.* Department of Public Safety (DPS) revoked Mr. Kelley's driver's license. Mr. Kelley requested an administrative hearing. The revocation was sustained and Mr. Kelley's driving privileges were suspended for 180 days. Following a non-jury trial on appeal to the district court, the revocation order was set aside and DPS was directed to return Mr. Kelly's license. We affirm the ruling of the trial court.

¶2 At approximately 2:00 a.m. June 8, 2006, having completed his investigation of an automobile burglary in the parking lot of Danny Bob's Hideout in Edmond, Oklahoma, Officer Kushmaul was walking back to his patrol car when he saw a parked Chevrolet Tahoe with the radio playing. Officer Kushmaul observed Shaun Kelley asleep in the rear cargo area of the vehicle on top of the back seats, which were folded down. The keys were in the ignition, allowing the radio to play, but the lights were off and the engine was not running. The windows of the S.U.V. were open a crack at the top. It took Officer Kushmaul several minutes of knocking to awaken Mr. Kelley from his slumber. When Mr. Kelley exited his vehicle, shoeless, Officer Kushmaul noted he had a strong odor of alcohol about him, was unsteady on his feet, exhibited slurred speech, and had watery, bloodshot eyes. Mr. Kelley admitted he had been drinking at the bar earlier that night.

¶3 When Officer Kushmaul asked Mr. Kelley if he believed he should be operating a motor vehicle, Mr. Kelley said, "I won't." Office Kushmaul testified Mr. Kelley became agitated at that point and began using abusive language but consented to a field-sobriety test. Office Kushmaul administered the HGN test, which Mr. Kelley completed. Mr. Kelley refused the next test, at which point the officer placed Mr. Kelley in handcuffs and took him into custody. After moving Mr. Kelley's vehicle backward ten feet and then forward ten feet to confirm it was operable, Officer Kushmaul placed Mr. Kelley under arrest for APC and resisting an officer.

¶4 Shortly thereafter, at the Edmond Police Station, Officer Kushmaul administered a breath test on Mr. Kelley. The results showed Mr. Kelley had a blood alcohol level of .14. Officer Kushmaul admitted he did not consider Mr. Kelley a suspect in the auto burglary and there had been no noise complaint, citizen's arrest, or hot pursuit. Officer Kushmaul further admitted he at no time witnessed Mr. Kelley either in the front of the vehicle, exiting the front of the vehicle, or operating the vehicle. He testified Mr. Kelley could have accessed the front seat with-

out exiting the vehicle. Officer Kushmaul acknowledged Mr. Kelley's Tahoe was parked in a parking lot,[1] not at a traffic light or on a public street, and there was no cause to issue a ticket for negligent parking.

¶ 5 For his part, Mr. Kelley testified he had been living out of his car for about two-and-a-half weeks at the time of his arrest and was scheduled to move into a house five days later. He testified he had all of his nice clothes in the Tahoe, as well as two pillows, a sheet and a blanket. He was using his cell phone as an alarm clock and had set it for 6:30 a.m. He had the key in the ignition because he always sleeps with a radio on. Mr. Kelley testified he had no intent to drive until the next morning. He refused to perform the second sobriety test because he was frustrated that Officer Kushmaul would not hear him out and look at the evidence in his truck regarding what his intentions were. He admitted to not having express permission from the bar owners to sleep in the parking lot, but stated they are all friends of his and no one had complained about him being there. The relevant facts are not in dispute.

▬▬ ¶ 6 The scope of a DPS license revocation hearing includes "the issues of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol ... and whether the person was placed under ar-rest." 47 O.S. Supp.2005 § 754(F). Probable cause for an arrest exists if the facts and circumstances within the arresting officer's knowledge are sufficient to warrant a prudent person in believing an offense had been or was being committed. *See Mike v. State,* 1988 OK CR 205, ¶ 6, 761 P.2d 911, 913; *see also DeVooght v. State,* 1986 OK CR 100, 722 P.2d 705.

¶ 7 The district court reviewed the case *de novo,* with DPS carrying the burden of showing Mr. Kelley had actual physical control of the vehicle while under the influence of alcohol. *See Trenton v. State ex rel. Dept. of Public Safety,* 1989 OK CIV APP 96, ¶ 5, 790 P.2d 1127, 1128. At the close of the hearing, the trial court stated it was setting aside the license revocation because Mr. Kelley was asleep in the back of his vehicle and was therefore not APC within the meaning of 47 O.S. Supp.2006 § 11–902(A) when Officer Kushmaul discovered him.[2] "On appeal from orders of the District Court in review of implied consent revocations, the appellate courts will not reverse or disturb the findings below 'if there is any evidence, or any reasonable inference to be drawn therefrom, which tends to support [the lower court's] findings.'" *Trenton, supra,* citing *Smith v. State, ex rel. Dept. of Public Safety,* 680 P.2d 365, 367 (Okl.1984) and *State ex rel. Dept. of Highways v. Sharpensteen,* 538 P.2d 1044, 1046 (Okl.1975). Stated another way, "On appeal from orders of implied consent revocations, an appellate court will not reverse the district court's findings unless they are erroneous as a matter of law or lack suffi-

---

1. The testimony as to whether the parking lot was public or private is in dispute. The Oklahoma Court of Criminal Appeals, in upholding a conviction for operating a motor vehicle while under the influence of intoxicating liquor under 47 O.S. § 11–902, interpreted the term "public parking lot" as used in 47 O.S. § 11–101 to mean "any parking lot which is adjacent to a right-of-way, or which the general public has access to." *Houston v. State,* 1980 OK CR 63, ¶ 5, 615 P.2d 305, 306. Under this definition, the parking lot servicing Danny Bob's Hideout qualifies as public.

2. 47 O.S. Supp.2006 § 11–902(A) states:

   It is unlawful and punishable as provided in this section for any person to drive, operate, or be in actual physical control of a motor vehicle within this state, whether upon public roads, highways, streets, turnpikes, other public places or upon any private road, street, alley or lane which provides access to one or more single or multi-family dwellings, who:
   1. Has a blood or breath alcohol concentration, as defined in Section 756 of this title, of eight-hundredths (0.08) or more at the time of a test of such person's blood or breath administered within two (2) hours after the arrest of such person;
   2. Is under the influence of alcohol;
   3. Is under the influence of any intoxicating substance other than alcohol which may render such person incapable of safely driving or operating a motor vehicle; or
   4. Is under the combined influence of alcohol and any other intoxicating substance which may render such person incapable of safely driving or operating a motor vehicle.

cient evidentiary foundation." *Hollis v. State ex rel. Dept. of Public Safety*, 2006 OK CIV APP 25, ¶ 4, 131 P.3d 145, 146, citing *Abdoo v. State of Oklahoma, ex rel. Dept. of Public Safety*, 1990 OK CIV APP 2, ¶ 11, 788 P.2d 1389, 1393. Matters submitted on stipulated facts or which present questions of law are reviewed *de novo*, however, meaning they are subject to an appellate court's plenary, independent, and nondeferential reexamination. *See Simic v. State ex rel. Dept. of Public Safety*, 2006 OK CIV APP 8, ¶ 7, 129 P.3d 177, 179–80, citing *Fine Airport Parking, Inc. v. City of Tulsa*, 2003 OK 27, ¶ 7, 71 P.3d 5, 9; see also *Justus v. State ex rel Dept. of Public Safety*, 2002 OK 46, ¶ 3, 61 P.3d 888, 889.

¶ 8 Because section 11–902(A) does not define or explain the phrase "actual physical control," the Oklahoma Court of Criminal Appeals (CCA) has consulted case law from other states in determining its meaning. CCA adopted the definition employed by the Montana Supreme Court in *State v. Ruona*, 133 Mont. 243, 321 P.2d 615 (1958). In that case, police discovered the appellant slumped over the wheel of his automobile, which was parked with the motor running partially blocking the traffic lane of a public street. When the officers shook appellant awake, he attempted to drive away, causing the vehicle to lurch back several feet. The Montana Supreme Court relied on the ordinary, dictionary definition of the words "actual," "physical," and "control" in concluding appellant was APC because he exhibited "existing or present bodily restraint, directing influence, domination or regulation, of an automobile, while under the influence of intoxicating liquor." *See Parker v. State*, 1967 OK CR 7, ¶ 11, 424 P.2d 997, 1000; see also *Mason v. State*, 1979 OK CR 132, ¶ 5, 603 P.2d 1146, 1148.

¶ 9 In *Bearden v. State of Oklahoma*, 1967 OK CR 133, 430 P.2d 844, decided the same year as *Parker*, the police responded to two calls regarding a traffic accident. When they arrived on the scene forty-five minutes later, they found a pickup truck hanging partially off the shoulder of the road with one end in the bar ditch. Bearden was lying face down on the ground. None of the witnesses who testified for the State ever saw Bearden in the truck. The first officer to respond to the call acknowledged no one was in charge of the truck when he reached the scene. CCA concluded the evidence presented was insufficient to hold Bearden in APC under § 11–902(A).

¶ 10 Following *Parker* and *Bearden*, CCA addressed a series of cases involving appellants who were asleep at the time they were discovered by police and arrested for APC. In *Cudjoe v. State*, 1974 OK CR 75, 521 P.2d 409, despite disputed testimony about whether the engine was running, CCA upheld appellant's APC conviction where his car was stopped in the right-hand lane of a public street and appellant was asleep in the driver's seat. In *Hughes v. State*, 1975 OK CR 83, 535 P.2d 1023, police discovered appellant's automobile sitting at a 90° angle in the roadway. Appellant was asleep in the front seat with his feet on the floorboard underneath the steering wheel and his head down leaning toward the passenger side. Appellant's keys were in the ignition but the engine was not running. CCA found sufficient competent evidence to support the APC verdict, holding:

> We believe an intoxicated person seated behind the steering wheel of a motor vehicle is a threat to the safety and welfare of the public. The danger is less than where an intoxicated person is actually driving a vehicle, but it does exist. The defendant when arrested may have been exercising no conscious violation with regard to the vehicle, still there is a legitimate inference to be drawn that he placed himself behind the wheel of the vehicle and could have at any time started the automobile and driven away.

*Id.*, ¶ 8, 535 P.2d at 1024.

¶ 11 Once again, in *Mason v. State*, 1979 OK CR 132, 603 P.2d 1146, CCA upheld an APC conviction where the appellant was intoxicated and unconscious behind the wheel of his parked car which was discovered with the headlights on, idling in a small parking lot. Appellant's legs were under the steering wheel, close to the pedals; the upper part of his body was on the passenger side of the front seat. CCA noted the appellant had

"created a highly dangerous situation by placing himself behind the wheel of his car and starting the engine while intoxicated." In rejecting the argument the occupant of a vehicle cannot, while asleep, exercise control over a vehicle within the meaning of § 11–902(A), CCA reasoned,

> We cannot allow the appellant to later extricate himself from these self-created dangerous circumstances by being discovered while unconscious. Such a rule would benefit the most blatant violators of the statute, while punishing individuals found in violation of the statute but intoxicated to a lesser extent.

*Id.,* ¶ 8, 603 P.2d at 1148. Finally, in *Wofford v. State,* 1987 OK CR 148, 739 P.2d 543, CCA upheld the APC conviction of a man who had his keys in the ignition while asleep behind the wheel of his vehicle, which was parked in the middle of a roadway at a State park, this despite the fact that the engine was not running at the time.

¶ 12 As is evident from the *Cudjoe, Hughes, Mason,* and *Wofford* line of cases, intoxicated occupants of motor vehicles do not have to be awake or conscious to be APC if they are found behind the wheel with the keys in the ignition, whether or not the engine is running. In each case, the fact that the men placed themselves behind the wheels of their vehicles when under the influence of alcohol was sufficient circumstantial evidence to support the conclusion that they either had been driving while intoxicated or could have awakened at any moment and done so. In addition, the motor vehicles at issue in *Cudjoe, Hughes,* and *Wofford,* were all stopped in the middle of roadways where they would not have been unless driven there by their occupant. Only in *Mason* was the car in a parking lot, but in that case, the engine was actually running and the headlights were on, which was sufficient circumstantial evidence of the fact that the occupant had recently driven the vehicle or was about to do so when he passed out.

¶ 13 There are two other Oklahoma APC cases of note, which involve intoxicated individuals who were awake when discovered by police, *Wilson v. State,* 2000 OK CIV APP 28, 998 P.2d 1241, and *Kyle v. State,* 1986 OK CR 117, 722 P.2d 1218. In *Wilson,* DPS revoked appellant's driver's license after police, in responding to reports of a traffic accident, discovered him intoxicated while revving the engine of his S.U.V. in an attempt to extricate it from a ditch. The trial court set aside the revocation, reasoning appellant could not have exercised actual physical control because his vehicle, being stuck in a ditch, was inoperable and there was no evidence to show who had been driving the S.U.V. at the time of the accident. Declaring, "[i]t is hard to imagine a case with stronger circumstantial evidence as to probable cause than the one before us," a division of this Court reversed, holding 47 O.S. § 754(F) and 22 O.S. § 196(5) require officers to have probable cause to believe the occupant *"had been* driving or *was* in actual physical control of a vehicle involved in an accident. Direct evidence is not required to prove probable cause." *Wilson, supra,* ¶ 11, 998 P.2d at 1244 (emphasis in original).

¶ 14 Upon arriving at the scene of a disturbance call, the officer in *Kyle* observed the appellant as he exited his motor vehicle from the driver's side. The car was parked partly in the roadway and partly in the driveway of a residence. Although uncertain where he found the keys, the officer testified he felt the hood of the car and detected heat emanating from the engine. Based on this circumstantial evidence, CCA held "there is a reasonable inference that the appellant was behind the wheel of the vehicle, before getting out, and that he could have started the vehicle and driven away." *Kyle, supra,* ¶ 7, 722 P.2d at 1219. As the *Wilson* and *Kyle* decisions make clear, APC determinations must be made on a case-by-case basis based on the totality of the circumstances.

¶ 15 DPS relies heavily on two foreign cases in support of its contention that Mr. Kelley was APC despite not being behind the wheel of his vehicle when Officer Kushmaul discovered him. In *City of Fargo v. Theusch,* 462 N.W.2d 162 (N.D.1990), the police responded to a report that a vehicle, in which someone was passed out, was blocking traffic in the back parking lot of a Hardee's restaurant. Officers discovered the appellant sleeping on the right side of the bench

seat of a pickup truck with keys in his right front coat pocket. The North Dakota Supreme Court upheld appellant's APC conviction, reasoning the location of the ignition key is but one factor to consider and that the purpose of APC statutes is "to deter individuals who have been drinking from getting in their vehicles, except as passengers." These facts would likely support an APC conviction in Oklahoma as well. The appellant was asleep in the front seat of his vehicle and it was blocking traffic, both of which are items of circumstantial evidence that he had operated or was about to operate the vehicle in an intoxicated state. Unlike the appellant in *Theusch,* Mr. Kelley was not asleep behind the wheel of his S.U.V., was not even in the front seat, and there was no evidence to indicate he had driven the car after becoming intoxicated.

¶ 16 DPS next focuses on *People v. Davis,* 205 Ill.App.3d 431, 150 Ill.Dec. 349, 562 N.E.2d 1152 (Ill.App.1990), in which the appellant testified that after drinking, he got in his S.U.V. and drove for about an hour before stopping his vehicle on the shoulder of the expressway, where he locked the doors, turned off the engine but left the keys in the ignition, climbed into the back seat, and zipped himself up in a sleeping bag where he was asleep when police discovered him. In acknowledging a degree of flexibility exists in the Illinois APC statute, the Illinois Appellate Court cited *People v. Cummings,* 176 Ill.App.3d 293, 125 Ill.Dec. 514, 530 N.E.2d 672 (1988), which held:

> We can expect that most people realize, as they leave a tavern or party intoxicated, that they face serious sanctions if they drive. While the preferred response would be for such people either to find alternate means of getting home or to remain at the tavern or party without getting behind the wheel until sober, this is not always done. And while we can say that such people should have stayed sober or planned better, that does not realistically resolve this all-too-frequent predicament.
>
> For the intoxicated person caught between using his vehicle for shelter until he is sober or using it to drive home, Guynn [*People v. Guynn,* (1975), 33 Ill.App.3d 736,

338 N.E.2d 239] encourages him to attempt to quickly drive home, rather than to sleep it off in the car, where he will be a beacon to police.
>
> We believe it would be preferable, and in line with legislative intent and social policy, to read more flexibility into *Guynn.* In those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily "sleeping it off" in his vehicle, and that he had no intent of moving the vehicle, trial courts should be allowed to find that the defendant was not "in actual physical control" of the vehicle for purposes of section 11–501.

*Cummings,* 125 Ill.Dec. 514, 530 N.E.2d at 675. The *Davis* court held the facts before it did not present one of "those rare instances" discussed in *Cummings* because "in addition to the other indicia of control" appellant had driven "for approximately one hour before stopping to 'sleep it off.' " *Davis,* 150 Ill.Dec. 349, 562 N.E.2d at 1157.

¶ 17 It is in light of this jurisprudence we must determine whether Mr. Kelley—who was living out of his vehicle at the time—was APC when, after parking his S.U.V. in the parking lot of a bar, he entered the bar, consumed several alcoholic beverages, then returned to his vehicle, removed his shoes, turned the key to allow the radio to play without starting the engine, and retired to the cargo area to sleep on pillow, blanket, and sheet until his alarm sounded at 6:30 a.m. We find Mr. Kelley's situation does present one of "those rare instances where the facts show that a defendant was furthering the goal of safer highways by voluntarily 'sleeping it off' in his vehicle." *Cummings,* 125 Ill.Dec. 514, 530 N.E.2d at 675. Given the lack of evidence Mr. Kelley drove his vehicle while intoxicated or had any plan to do so, we agree with the trial court that there is insufficient circumstantial evidence to support a finding Mr. Kelley was APC when Officer Kushmaul awakened him.

¶ 18 Unlike the appellants in *Cudjoe, Hughes, Mason,* and *Wofford,* Mr. Kelley was not behind the wheel. Unlike the appellants in *Wilson* and *Kyle,* Officer Kushmaul did not witness Mr. Kelley revving the engine or exiting the vehicle from the driver's

side. The engine was not running; the headlights were not on; the vehicle was not in the middle of a roadway, on the shoulder of a roadway, or improperly parked. It is therefore reasonable to conclude, and there is no evidence to the contrary, Mr. Kelley neither drove nor planned to drive the vehicle after he became intoxicated. Much like someone in an R.V. or a mobile home, Mr. Kelley was a passive occupant of his vehicle, using it as a place of repose and rest. He posed no threat to the public at the time of his arrest when he was sound asleep in the back of his S.U.V. As Mr. Kelley was not in actual physical control of his vehicle there was no probable cause for his arrest.

¶ 19 For the reasons set forth above, we find that the trial court did not err in setting aside the DPS revocation order and directing that Mr. Kelly's license be returned. We hereby AFFIRM the district court's decision to reinstate Appellee's driving privileges.

¶ 20 AFFIRMED.

ADAMS, J., and JOPLIN, P.J., concur.