2013 OK CIV APP 48

**Jason BROCKMAN, Plaintiff/Appellant,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, and Michael C. Thompson, as Commissioner of Public Safety, Defendants/Appellants.**

No. 111,190.

Court of Civil Appeals of Oklahoma, Division No. 3.

April 8, 2013.

John M. Dunn, Stephanie Bush, Law Offices of John M. Dunn, P.L.L.C., Tulsa, Oklahoma, for Plaintiff/Appellant.

Margaret C. Farish, Department of Public Safety, Oklahoma City, Oklahoma, for Defendants/Appellees.

BAY MITCHELL, Judge.

¶ 1 Plaintiff Jason Brockman appeals an order of the district court affirming the revocation of his driver's license by the Oklahoma Department of Public Safety (DPS).

¶ 2 Brockman was arrested for being in actual physical control (APC) of a motor vehicle while under the influence of alcohol in violation of 47 O.S.2011 § 754. The arresting officer was dispatched to an apartment complex in response to reports of a fight in progress. Upon arriving at the scene, the officer determined Brockman had been involved in the altercation. Brockman was sitting in the passenger seat of his vehicle, with the keys in the ignition and the motor running. Brockman testified that his wife had driven to the apartment to pick up her sister, who planned to drive Brockman and his wife home because they had been drinking at a bar and were intoxicated. Brockman claims that while his wife was inside her sister's apartment, he stepped out of the vehicle to smoke a cigarette and was involved in an altercation. When his wife and sister-in-law came out of the apartment, Brockman again entered the vehicle on the passenger's side. His wife and another passenger sat in the back seat, and his sister-in-law entered the driver's seat and started the ignition. The apartment manager came out to investigate the altercation that had occurred, and called the sister-in-law over to discuss it.[1] It was at that time the police officer arrived and observed Brockman in the passenger seat with the driver's side empty and the car running. Brockman consented to a breathalyzer test. His blood alcohol content was .16 and he was served notice of the revocation of his driver's license. Brockman was arrested for assault and battery and for APC. He timely requested an administrative hearing with DPS, and the revocation was sustained for 180 days.

¶ 3 Brockman appealed to the district court from the DPS hearing.[2] At the hear-

---

1. It appears the wife may have exited the vehicle with her sister at this time.

2. Title 47 O.S.2011 § 6–211 provides that a party may appeal DPS' decision in a revocation hearing to the district court. The statute provides: "The court shall take testimony and examine the facts and circumstances ... and determine from the facts, circumstances, and records whether or not the petitioner is entitled to driving privileges or shall be subject to the order of denial, cancellation, suspension or revocation issued by the Department." *Id.* § 6–211(I). "In case the court finds that the order was not justified, the court may sustain the appeal, vacate the order of the Department and direct that driving privileges

ing in the district court, Brockman testified that he had not driven the car that night, had no intention of driving, and that he was waiting on his sister-in-law to drive him home when the officer arrested him. The officer testified that he was not informed at the scene that another person was planning to drive, and that although he had no evidence that Brockman had driven that evening, or had any intention of driving, that "people lie to [him] all the time." The district court found the officer had reasonable grounds to believe that Brockman was in APC of a motor vehicle while under the influence of alcohol and that the arrest was legal, and sustained the revocation. Brockman appeals.

¶ 4 Title 47 O.S.2011 § 754(C) provides that DPS "shall revoke or deny the driving privilege" of a person arrested when an "officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law." "Actual physical control" is not defined by statute, but this Court has previously adopted a definition of it as "existing or present bodily restraint, directing influence, domination or regulation, of an automobile, while under the influence of intoxicating liquor." *State ex rel. Dep't of Pub. Safety v. Kelley*, 2007 OK CIV APP 99, ¶ 8, 172 P.3d 231, 234 (citing *Parker v. State*, 1967 OK CR 7, ¶ 11, 424 P.2d 997, 1000 (citing *State v. Ruona*, 133 Mont. 243, 321 P.2d 615 (1958))). The statute provides for a hearing before DPS to contest the license revocation. 47 O.S.2011 § 754(D). "The scope of a DPS license revocation hearing includes 'the issues of whether the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads, highways, streets, turnpikes or other public place of this state while under the influence of alcohol ... and whether the person was placed under arrest.'" *Kelley*, 2007 OK CIV APP 99, ¶ 6, 172 P.3d at 233; 47 O.S.2011 § 754(F).

be restored to the petitioner, if otherwise eligi-

¶ 5 On appeal, we review the district court's order in an implied consent revocation to determine whether it lacks sufficient evidentiary foundation or is erroneous as a matter of law. *Kelley*, 2007 OK CIV APP 99, ¶ 7, 172 P.3d at 233–34 (citing *Hollis v. State ex rel. Dep't of Pub. Safety*, 2006 OK CIV APP 25, ¶ 4, 131 P.3d 145, 146). We review questions of law *de novo*. *Id.*

¶ 6 The parties disagree over whether Brockman's lack of intent to drive the vehicle is a factor that can be considered when determining whether probable cause existed for the arrest. DPS cites cases involving defendants convicted of APC even though they were unconscious or asleep at the time of the incidents, claiming this supports the contention that intent is not a relevant consideration. However, in a majority of these cases the defendant was located in the driver's seat of the vehicle, and in a position to operate the vehicle upon waking or regaining consciousness, even though intent was lacking because the driver happened to be temporarily asleep or unconscious. *See Wofford v. State*, 1987 OK CR 148, 739 P.2d 543; *Mason v. State*, 1979 OK CR 132, 603 P.2d 1146; *Hughes v. State*, 1975 OK CR 83, 535 P.2d 1023; *Cudjoe v. State*, 1974 OK CR 75, 521 P.2d 409.

¶ 7 In this case, Brockman was not asleep, but he was also not in a position in the vehicle where he had the present ability to drive. "APC determinations must be made on a case-by-case basis based on the totality of the circumstances." *Kelley*, 2007 OK CIV APP 99, ¶ 14, 172 P.3d at 235. We find that in this case intent is a relevant factor the court may consider in determining whether the totality of the circumstances support the officer's belief that Brockman was in APC of the vehicle. This is in accordance with the opinion of this Court in *Kelley*:

Given the lack of evidence Mr. Kelley drove his vehicle while intoxicated *or had any plan to do so*, we agree with the trial court that there is insufficient circumstantial evidence to support a finding Mr. Kel-

ble." *Id.*

ley was APC when Officer Kushmaul awakened him.

*Id.* ¶ 17, 172 P.3d at 236 (emphasis added).

■ ¶ 8 The district court, when making its determination in the instant case, stated that "it is not enough in an APC case to be able to show that somebody else drove the car there," or that "the Defendant may not have ever touched the keys, never started the car, and had no intention to drive it off while he was sleeping." We find it was error in a case such as this, where there is a total lack of evidence that the Defendant was ever behind the wheel of the car, not to consider his lack of intent to drive as an element when considering whether the totality of the circumstances support a finding of probable cause as to APC.

■ ¶ 9 We find the record devoid of any evidence that Brockman had driven, or intended to drive the vehicle on the night of the arrest. Given his location in the passenger's seat of the vehicle, absent some additional evidence that would suggest that he had driven or would attempt to operate the vehicle, we find a lack of support for a finding of reasonable belief as to APC. This is true even if we do not consider Brockman's testimony that the driver's side door was open and the console in the center of the truck's front seat was in the down position at the time the officer arrived, to which the officer gave conflicting testimony.[3] This is further supported by the fact that there was a passenger in the back seat of the vehicle at the time the officer arrived.

■ ¶ 10 It is true that by making it a crime to be in actual physical control of a motor vehicle while intoxicated the legislature intended to allow a "drunk driver to be apprehended before he strikes." *Hughes v. State,* 1975 OK CR 83, ¶ 7, 535 P.2d 1023, 1024. However, the determination in this case that Brockman was in actual physical control of the vehicle does not serve that

purpose. And, it fails to recognize the policy of encouraging what might otherwise be drunk drivers to obtain a sober driver for a vehicle. It is not a violation of the law for an intoxicated person to be present as a passenger in a vehicle. This is not a case in which a legitimate inference may be drawn that an intoxicated person who has placed himself behind the wheel and then fallen asleep, may wake up at any time and drive away. In such a case, intent would not be a controlling factor in determining APC. *See Hughes,* 1975 OK CR 83, ¶ 8, 535 P.2d at 1024. There is no evidence in this record to support a finding that Brockman was in the driver's seat at any time, other than the officer's belief that people often lie to him. "Probable cause exists if the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent man in believing that an offense had been or was being committed." *Wilson v. State ex rel. Dep't of Pub. Safety,* 2000 OK CIV APP 28, ¶ 11, 998 P.2d 1241, 1244 (citing *DeVooght v. State,* 1986 OK CR 100, ¶ 8, 722 P.2d 705, 709). Probable cause may be established by circumstantial evidence, but it must be based on more than mere suspicion. *See id.; Seher v. State,* 1976 OK CR 195, ¶ 13, 554 P.2d 66, 69. DPS contends that it was never communicated to the officer that Brockman had a designated driver on the evening of the arrest. However, in this case there is a lack of even circumstantial evidence that Brockman had driven or would drive the vehicle that evening, or was ever in the driver's seat.[4] The officer's suspicion alone is not enough to support the revocation in this case.

¶ 11 We have previously held that actual physical control determinations must be made on a case-by-case basis. *Kelley,* 2007 OK CIV APP 99, ¶ 14, 172 P.3d at 235. We find a lack of evidence to support the determination in this case that probable cause

---

3. We will give deference to the district court's determination as to credibility of witnesses, and where conflicting evidence is presented we will not re-weigh the evidence but affirm the district court as to factual determinations if supported by competent evidence. *Florafax Int'l, Inc. v. GTE Mkt. Res., Inc.,* 1997 OK 7, ¶ 3, 933 P.2d 282,

287; *Bane v. Anderson, Bryant & Co.,* 1989 OK 140, ¶ 28, 786 P.2d 1230, 1236.

4. It seems more plausible to infer from the empty driver's seat and the presence of at least one passenger in the rear of the vehicle that another had been or would be in the driver's seat.

existed to arrest Brockman for APC. The order of the district court is therefore RE-VERSED AND REMANDED FOR FURTHER PROCEEDINGS consistent with this Opinion.

HETHERINGTON, P.J., concurs.

GOREE, J., dissents.

¶ 12 The district court's order was not erroneous as a matter of law and it did not lack sufficient evidentiary foundation. *Hollis v. Dept. of Public Safety,* 2008 OK 31, ¶ 10, fn. 4, 183 P.3d 996, 999. "Actual physical control" contemplates the exercise of "directing influence over" and "the authority to manage" the vehicle. *Hughes v. State,* 1975 OK CR 83, 535 P.2d 1023, 1024. The defendant in *Hughes* was in actual physical control of the vehicle because he "placed himself behind the wheel of the vehicle and *could have at any time started the automobile and driven away." Hughes,* ¶ 8, 535 P.2d at 1024 (emphasis added).

¶ 13 The police officer in this case encountered Mr. Brockman when he was intoxicated, aggressive, and sitting alone in the front passenger seat of his vehicle with the engine running. Under the circumstances of this case, and consistent with *Hughes,* Plaintiff had the "authority to manage" his truck by immediately moving behind the wheel and attempting to drive away while under the influence of alcohol. The legislature "intended to enable the drunken driver to be apprehended before he strikes." *Hughes,* ¶ 7, 535 P.2d at 1024.

¶ 14 The Supreme Court has explained that the state's interest in driver's license revocation proceedings is "to foster safety by temporarily removing from public thoroughfares those licensees who have exhibited dangerous or erratic behavior." *Price v. Reed,* 1986 OK 43, ¶ 11, 725 P.2d 1254, 1260. The police officer's arrest was reasonably based on his observations and the district court correctly sustained the Department of Public Safety's order revoking Plaintiff's driver's license for 180 days.